414 A.2d 54

**COMMONWEALTH of Pennsylvania**

v.

**Thomas J. MASTRANGELO, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1980.

Decided April 28, 1980.

256

William J. Gallagher, West Chester, for appellant.

Joan D. Lasensky, Asst. Dist. Atty., Lee Ruslander, West Chester, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Thomas J. Mastrangelo, was convicted in a non-jury trial of disorderly conduct and obstructing administration of law or other governmental function. Post-verdict motions were denied. Appellant was sentenced to concurrent prison terms of one to twenty-three months. Appellant was also ordered to pay two $500 fines. The Superior Court affirmed *per curiam* and we granted appellant's petition for allowance of appeal.

This case arises out of incidents that occurred in February, 1976 in the Borough of Phoenixville in Chester County. Appellant had a place of business called the "Blue Jay" on Bridge Street in Phoenixville. When the incidents in question occurred, appellant's car was parked on the street in front of his establishment. The street was metered and was being patrolled by Diane Young, a meter maid employed by the Borough. According to Young's testimony, she was patrolling the street during the morning of February 3. She ticketed appellant's car, which was illegally parked at a meter. Appellant came out of his store and shouted at her, repeatedly calling her a "fucking pig". Ms. Young walked away, but appellant continued shouting at her.

On February 4, Ms. Young was again patrolling Bridge Street. She again observed appellant's car, but did not ticket it because it was legally parked. Nonetheless, appellant came out of his store and followed Ms. Young along Bridge Street, shouting at her and calling her, among other things, a "nigger lover" and a "cocksucker". Ms. Young asked appellant to leave her alone, but he continued to follow her, yelling the entire time, until she left the area. On both occasions, Ms. Young testified that bystanders on the street observed appellant's conduct; none, however, testified in court.

Ms. Young also testified that appellant's actions had frightened her. In fact, Ms. Young did not patrol Bridge Street from February 5 to February 12 because of her fear of appellant.

Appellant first argues that the charge against him for disorderly conduct must be dismissed because the statute under which he was charged is facially invalid on the ground of vagueness or, in the alternative, is invalid as applied to him. Appellant was convicted under the disorderly conduct statute, which provides:

"(a) Offense defined—A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

\* \* \* \* \* \*

"(2) Makes unreasonable noise.

\* \* \* \* \* \*

"(b) Grading.—An offense under this subsection is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or *if he persists in disorderly conduct after reasonable warning or request to desist.* Otherwise disorderly conduct is a summary offense.

"(c) Definition.—As used in this section, the word "public" means *affecting* or *likely to affect persons in a place to which the public or a substantial group has access*; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 5503. (Emphasis added.)

In *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), the Court stated:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess

at its meaning and differ as to its application, violates the first essential of due process of law."

 In reviewing appellant's facial attack on the vagueness of the statute in question, it is important to remember, as we stated in *Commonwealth v. Heinbaugh*, 467 Pa. 1, 4–5, 354 A.2d 244, 245 (1976), that:

"Absent the assertion of an infringement of First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged." (Footnote omitted.)

Appellant argues that the disorderly conduct statute is so vague that a man of common intelligence could reasonably believe the statute made criminal the valid exercise of a protected First Amendment right.

Although appellant's claim is that the statute is vague, aspects of overbreadth analysis are brought into play. As Mr. Justice Pomeroy has aptly stated:

"If a colorable claim is asserted that enforcement of a statute would infringe upon the exercise of protected First Amendment activity by the public, then a facial attack upon the statute may be proper. While the overbreadth and vagueness theories upon which appellees rely have distinct constitutional bases, they serve a common function when advanced to challenge a statutory provision which colorably infringes upon the public's exercise of First Amendment freedoms. *The vice which both theories attack is an impermissible chilling effect on conduct which may be protected. Whether that effect is generated by statutory terms which, while definite, are too broad in sweep, or by statutory terms the sweep of which is unknown because the terms are too imprecise, the infringement on First Amendment freedoms is the same, members of the public are forced to risk criminal prosecution in order to engage in activity which may be protected by the First Amendment.* The public's interest in guarding against such infringements is sufficiently important that any defendant may challenge the constitutionality of the language of the statute as it might be applied to the

public at large, notwithstanding that his own actual conduct may not be protected by the First Amendment. As a consequence, a statute which is challenged on First Amendment overbreadth or vagueness grounds may be scrutinized by a court on its face, not in light of its application in the particular case before the court.

"See *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 884 (1970); Note, Due Process Requirement of Definiteness in Statutes, 62 Harv.L.Rev. 77 (1948); Note, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960)." *Commonwealth v. Cook*, 468 Pa. 249, 257, 361 A.2d 274, 278 (1976) (Concurring opinion) (Emphasis added.)

■ It is well-settled that when faced with a state statute, the constitutionality of which is being challenged on grounds of vagueness and overbreadth, the United States Supreme Court is required to accept any narrowing and limiting construction given the statute by the state courts. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1971); *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). As the instant appeal presents this court with its first opportunity to examine the constitutionality of our disorderly conduct statute, we are thus free, and in fact obligated, to narrow and limit said statute in light of the protections guaranteed by the United States and Pennsylvania Constitutions.

■ A state, in a valid exercise of its police power, may enact laws to protect the public peace.[1] In response to this obligation, the legislature passed the aforementioned disorderly conduct statute, which, by its terms prohibits any person from *intentionally* or *recklessly* causing or creating a risk of *public* inconvenience, annoyance or alarm by making

---

1. Comment, Public Disorder Offenses Under Pennsylvania's New Crimes Code, 78 Dick.L.R. 15 (1973).

unreasonable noise. Regarding the intent element, one commentator has stated:

"The heavy emphasis of the new statutory language on the intent or knowledge of the actor rightfully supplants the former focus on the effects of the actor's conduct on others, since one of the basic postulates of the criminal law is to base punishment on the unlawful intent or mens rea of the actor. A mentally competent individual has a choice between acting lawfully or unlawfully in a given situation and, if he wilfully chooses the unlawful course of action, he is punished. It is inconsistent with this theory to punish solely for the effect which one's lawful conduct has on others. Under the generally imprecise language of the prior laws, this was entirely possible. For example, a speaker, who had no intention to disrupt, could have been held criminally liable for the provocation of unruly behavior in those hostile to his public statements. This is no longer true under the new Code. Punishable offenses in this area are now limited to that unlawful behavior which in and of itself disturbs the public order and tranquility." Comment, Public Disorder Offenses Under Pennsylvania's New Crimes Code, 78 Dick.L.R. 15, 30 (1973). (Footnotes omitted.)

Further, the element of "unreasonable noise" had been defined under prior law as "not fitting or proper in respect to the conventional standards of organized society or a legally construed community". *Commonwealth v. Greene*, 410 Pa. 111, 113, 189 A.2d 141, 143 (1963). We believe a man of common intelligence would understand what is and what is not made criminal under this statute, especially after we now make clear that the disorderly conduct statute may not be used to punish anyone exercising a protected First Amendment right. By so limiting this statute, appellant's facial attack concerning the vagueness of the disorderly conduct statute must fail. *Commonwealth v. DeFrancesco*, 481 Pa. 595, 393 A.2d 321 (1978).

Having determined the disorderly conduct statute is not facially vague, we must now determine whether the

statute was constitutionally applied to appellant. In *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), the Court stated:

"Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' *Cantwell v. Connecticut*, 310 U.S. 296, 309–310, 60 S.Ct. 900, 905–906, 84 L.Ed. 1213." (Footnotes omitted.)

It is clear in the instant case that appellant was not exercising any constitutionally protected right; rather, in a loud, boisterous and disorderly fashion, he hurled epithets at the meter maid which we believe fit the *Chaplinsky* definition of fighting words. Even under our narrow construction of the disorderly conduct statute, we can find no merit in appellant's argument that the statute was invalid as applied to him.

In *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), the Court held that a statute could be void for vagueness if it encouraged arbitrary and erratic arrests and convictions. Thus, if a statute's meaning is sufficiently unclear with the result of allowing unbridled police and judicial discretion to deter-

mine who may be arrested and convicted, said statute should be declared unconstitutionally vague. We believe, however, that our disorderly conduct statute is not so vague as to allow the dangers above described. We thus reject appellant's vagueness attack in its entirety. *Commonwealth v. DeFrancesco, supra.*

 Appellant frames his final two issues as follows: ". . . Whether the Court below should have sustained the defendant's demurrer to the charge of disorderly conduct by making unreasonable noise on the ground that the Commonwealth failed to introduce sufficient evidence to constitute the crime charged?

"Whether the Court below should have sustained the defendant's demurrer to the charge of obstructing administration of law or other governmental function on the ground that the Commonwealth failed to introduce sufficient evidence to constitute the crime charged?"

In a footnote in *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 347–48, 353 A.2d 387, 389 (1976), we stated:

"The appellant frames this question in terms of whether the trial court erred in not sustaining his demurrer to the evidence for lack of proof of cause of death. Since, however, the defendant did not rest following this adverse ruling, but elected to put in a case in defense, the correctness of the ruling on the demurrer is no longer an available issue. See *Commonwealth v. Moore*, 398 Pa. 198, 201–202, 157 A.2d 65 (1959); *Commonwealth v. Spanos*, 167 Pa.Super. 629, 631, 76 A.2d 243 (1950). But see *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973). We have chosen, nevertheless, to treat the question as if properly framed, namely, whether the trial court erred in refusing defendant's motion in arrest of judgment. In doing so, of course, we consider all of the evidence at trial, not only that contained in the Commonwealth's case in chief. See *Commonwealth v. Terenda*, 433 Pa. 519, [252 A.2d 635] (1969); *Commonwealth v. Tabb*, 417 Pa. 13, [207 A.2d 884] (1965); *Commonwealth v. Moore*, supra; *Commonwealth v. Kohne*, 204 Pa.Super. 78,

[203 A.2d 401] (1964); *Commonwealth v. Gomori*, 192 Pa.Super. 325, [161 A.2d 649] (1960); *Commonwealth v. Cerzullo*, 175 Pa.Super. 330, [104 A.2d 179] (1954)."

In the instant case, appellant put on a case in defense, so that the ruling on the demurrer is no longer an available issue. As in *Ilgenfritz*, however, we will treat the issues as a properly framed challenge to the sufficiency of the evidence to sustain appellant's convictions. Finding the evidence to be sufficient in both instances, we affirm.

■ As we have oft stated:

"Our test for passing on the sufficiency of the evidence is well-known: ' "[T]he test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." ' *Commonwealth v. Carbonetto*, 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). See also *Commonwealth v. Green*, 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Long*, 460 Pa. 461, 333 A.2d 865 (1975); *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). In addition, we are to consider the evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Green*, supra; *Commonwealth v. Rife*, 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 404, 272 A.2d 886 (1971)." *Commonwealth v. Ilgenfritz, supra*, 466 Pa. at 348, 353 A.2d at 389.

As previously mentioned, one is guilty of disorderly conduct if, with the intent of breaching the public peace, he makes unreasonable noise. We believe our discussion concerning the constitutionality of the disorderly conduct statute *as applied* to appellant shows that the evidence presented at trial was sufficient to sustain appellant's conviction for that crime. Suffice it to note that appellant's criminal conduct was properly graded as a misdemeanor, since he

persisted in his disorderly conduct after being asked by Ms. Young to desist.

The Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 5101 provides:

"A person commits a misdemeanor of the second degree *if he intentionally obstructs, impairs or perverts the administration of law or other governmental function* by force, violence, physical interference or obstacle, breach of official duty, or *any other unlawful act,* except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions." (Emphasis added.)

Instantly, appellant, through a course of disorderly conduct, intentionally obstructed a meter maid from carrying out her lawful duties and was thus properly convicted by more than sufficient evidence.

Judgments of sentence affirmed.

ROBERTS, J., files a concurring and dissenting opinion.

FLAHERTY, J., files a dissenting opinion.

ROBERTS, Justice, concurring and dissenting opinion.

I agree with the majority that appellant's conviction for obstructing the administration of law must be affirmed. The record clearly establishes that appellant's abusive, threatening remarks to Ms. Young caused her fear and alarm and prevented her from properly performing her duties as a meter maid.

I cannot agree, however, that the Commonwealth has produced sufficient evidence to convict appellant of disorderly conduct. There is simply nothing in this record to suggest that appellant's remarks, shocking and unpardonable as they are, produced "unreasonable noise." 18 Pa.C.S.A.

§ 5503(a)(2). This subsection of the statute is plainly not intended to criminalize speech and I would not sanction its use in such a way. I would reverse the judgment of sentence based only on appellant's conviction for disorderly conduct and affirm judgment of sentence for obstructing the administration of law.

FLAHERTY, Justice, dissenting.

The statute in question defines the offense as follows:

"A person is guilty of disorderly conduct if, with the intent to cause public *inconvenience, annoyance or* alarm, or recklessly creating a risk thereof, he:

(2) Makes unreasonable noise." (emphasis supplied)

Mr. Justice Manderino dissenting in *Commonwealth v. Cook,* 468 Pa. 249, 263, 361 A.2d 274, 281–282 (1976) said:

"What is 'serious inconvenience, annoyance or alarm'? Those are all value words which depend entirely upon the personal views of each of us. What constitutes annoyance to one person is not always annoyance to another. Nor does inconvenience mean the same to all. For instance the sounds of a parade, or even the parade itself, may cause great public inconvenience to many, while at the. same time be a source of pleasure to others . . . A facial attack on a statute is indeed proper if the scope of the statute is so broad that it could be read as restricting or forbidding conduct which is protected by the First Amendment. See *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)."

Certainly, one does not have to strain to imagine this statute being read to restrict conduct protected by the First Amendment, and one must speculate at its meaning and application.

I therefore dissent and would declare the subject statute unconstitutional on its face.