490 A.2d 853

COMMONWEALTH of Pennsylvania

v.

Sharon F. WEISS, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 7, 1984.

Filed March 22, 1985.

Petition for Allowance of Appeal Denied Sept. 16, 1985.

Allen H. Krause, Lebanon, for appellant.

John Feather, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before WICKERSHAM, DEL SOLE and POPOVICH, JJ.

WICKERSHAM, Judge:

At approximately 11:00 p.m. on November 26, 1982, Anthony Finkle, a police officer with the Annville Township Police Department, responded to a report of a hit and run accident at the Stone Hill Trailer Park in Annville. The report had been called in by Chris Gettle, appellant's next-door neighbor, and involved appellant's husband, Bruce Weiss. Officer Finkle subsequently tried to place Mr. Weiss under arrest, but Mr. Weiss broke the officer's grasp three times and eventually went into the trailer where he and appellant lived. The officer attempted to follow Mr. Weiss into the trailer, but he discovered the door was locked. He then broke open the locked door and proceeded inside, where he first encountered appellant, Sharon Weiss.

Thereupon, appellant started to yell and use various obscenities, telling the officer to get out of her house and off her property. Officer Finkle requested that she stop swearing and lower her voice, but she did neither. After Officer Finkle finally placed Mr. Weiss in custody and took him outside to the police car, he requested identification from appellant. She refused to give him any and, using similar language, asked who was going to pay for the broken door. When Officer Finkle returned to the door of the trailer, however, she handed him her driver's license. This entire incident took place in approximately one minute. She was subsequently charged with disorderly conduct and was found guilty by a district justice on January 5, 1983. She appealed to the Lebanon County Court of Common Pleas and following a trial *de novo* on March 25, 1983, was again found guilty. Following unsuccessful post-trial motions, she filed this timely appeal.

Appellant raises the following issues before us:

1. Did the Commonwealth prove beyond a reasonable doubt that the obscene language used by Appellant was done with an intent to cause public annoyance or alarm, or recklessly creating a risk thereof?

2. Did the Court err with prejudice to Appellant, in its five rulings on objections during the Hearing, all of said rulings being against the Appellant and in favor of the Commonwealth, said rulings being as follows:

(a) On cross-examination of Prosecutor Finkle, Counsel for Appellant-Defendant asked him whether he was complaining about Appellant-Defendant objecting to his breaking into her home and entering same, to which the Commonwealth objected and the Court sustained the objection as argumentative.

(b) On Cross-examination of Prosecutor Finkle, upon Appellant-Defendant's Counsel questioning him as to whether or not he had a warrant when he broke into Appellant-Defendant's home, the Commonwealth objected and the Court sustained the objection.

(c) Upon Appellant-Defendant's Counsel, on cross-examination of Prosecutor Finkle, asking him under what authority he asked Appellant-Defendant to furnish identification, the Commonwealth objected and the objection was sustained.

(d) Appellant-Defendant objected to Commonwealth questioning its witness, Gettle on redirect examination as to matters not raised on cross-examination, which objection was overruled and the Commonwealth was permitted to elicit testimony of material not proven on direct examination.

(e) Appellant-Defendant's objection to Commonwealth's questioning of Appellant-Defendant on cross-examination regarding language used by Appellant-Defendant's husband was overruled and the Commonwealth was permitted to proceed to elicit material which was not only not relevant to Appellant-Defendant's guilt, but was prejudicial to her case.

3. Did the Court err in increasing the penalty assessed against Appellant by the District Justice of Fifty Dollars ($50.00) to Two Hundred Fifty Dollars ($250.00) upon a finding of guilty on appeal from summary conviction.

Brief for Appellant at 6–7. Due to our disposition of appellant's first issue, we find it unnecessary to answer her remaining issues.

Appellant contends that the evidence was not sufficient to convict her of disorderly conduct. Specifically, she alleges that the Commonwealth did not prove beyond a reasonable doubt that her language was intended to cause public annoyance or alarm or recklessly created a risk thereof.

In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt.... The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

*Commonwealth v. Taylor*, 324 Pa.Super. 420, 424, 471 A.2d 1228, 1229–30 (1984) (citations omitted).

Appellant was charged with and convicted of violation of section 5503(a)(3) of the Pennsylvania Crimes Code, 18 Pa.C.S. 5503(a)(3). This statute provides in pertinent part:

**§ 5503. Disorderly conduct**

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

\*      \*      \*      \*      \*      \*

(3) uses obscene language, or makes an obscene gesture;

\*      \*      \*      \*      \*      \*

(b) **Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

**(c) Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

We have carefully read the record, the briefs of the parties, and the well-written opinion of the lower court *en banc.* We have also examined the case law cited by the parties and the lower court, plus some cases not cited and a number of similar cases from foreign jurisdictions. We have also reviewed the line of United States Supreme Court cases in this area of the law beginning with the landmark case of *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). We have not been successful, however, in finding a case on point with the instant case.[1] A quick review of the recent Pennsylvania cases is demonstrative. In *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980), the supreme court affirmed defendant's conviction for disorderly conduct[2] resulting from two incidents in which the defendant storeowner came out of his store into the street and in a loud and boisterous fashion, hurled epithets at a meter maid. In *Commonwealth v. Pringle,* 304 Pa.Super. 67, 450 A.2d 103 (1982), our court affirmed defendant's conviction for disorderly conduct resulting from an incident in which defendant

---

**1.** A case with facts similar to the instant case is *People v. Jerome,* 8 Misc.2d 883, 168 N.Y.S.2d 452 (1957). In that case, the court held that obscene language directed towards police officers by the defendant while he stood inside the private home of his hosts, where the officers had come to investigate a complaint, did not constitute disorderly conduct. There are a number of cases, with varying results, in which the defendant directs obscene language towards the police while sitting or driving inside a private car (where presumably, the "public" is not present), or in other "one-on-one" confrontations. *See, e.g.,* 14 A.L.R. 4th 1252 §§ 9, 10, 15–18, and the cases cited therein.

**2.** Defendant was convicted under a different sub-section of the disorderly conduct statute prohibiting the making of unreasonable noise. 18 Pa.C.S. § 5503(a)(2).

shouted profane names and insults at police officers on a public street where a crowd had gathered to watch the arrest of a third party. In *Commonwealth v. Kidd*, 296 Pa.Super. 393, 442 A.2d 826 (1982), our court affirmed defendant's conviction for disorderly conduct resulting from defendant's screaming and shouting obscenities at police officers in a hospital emergency room, following his arrest by the officers for public drunkenness. Finally, defendant's conviction for disorderly conduct was also affirmed by our court in *Commonwealth v. Hughes*, 270 Pa.Super. 108, 410 A.2d 1272 (1979). In that case, defendant was enraged at being refused admittance to a party at 4:35 a.m. and, after crossing the street, began shouting obscenities at the persons at the party and the officers who had responded to the call. Defendant also spat in the face of one of the officers.

■ Instantly, the testimony of Officer Finkle and a second police officer who arrived at the scene towards the end of the incident showed that appellant directed her speech solely at Officer Finkle. As stated in *Commonwealth v. Hughes, id*, however, a person may be found guilty of disorderly conduct within the definition of section 5503 if in the presence of members of the general public, he or she shouts obscenities although the principal intent of the defendant may have been to insult the police officer(s) rather than to cause *public* inconvenience, annoyance, or alarm. *Id.*, 270 Pa.Superior Ct. at 111, 410 A.2d at 1274. In each of the four cases cited above, however, the defendants were either on a public street, sidewalk, or in a public building when they uttered their various offensive statements to the police. We have found no case in which the conviction resulted from a police officer breaking down the locked door of a person's home at 11:00 at night and arresting that person when he or she protested, obscenely or otherwise. We find that the distinction between the facts of this case and the cited case law is controlling.

■ The lower court found that appellant's sole intent was to insult Officer Finkle, but still found appellant guilty for using obscene language in such a manner as to reckless-

ly create a risk of public alarm or annoyance. The court pointed to the testimony of appellant's next door neighbor, Chris Gettle, who stated that he could hear appellant's shouting from his trailer located 15 or 20 feet away. While we do not doubt that Mr. Gettle could hear appellant, in reviewing his testimony we must remember two things. First, appellant's door would not have been open and her voice presumably would not have carried beyond the walls of her home, had not Officer Finkle broken the door when he entered.[3] Second, Mr. Gettle was the complainant in the original report of a hit and run against appellant's husband, so it is likely that he was very interested in the subsequent events in the trailer next door. Vulgar language, however distasteful or offensive to one's sensibilities, does not become a crime because people standing nearby stop, look, and listen. *People v. Douglas*, 29 Ill.App.3d 738, 331 N.E.2d 359 (1975).

■ Nor do we feel that appellant's verbal assault was something that Officer Finkle was unable to handle. "Indeed, police officers must expect, as part of their jobs exposing them to daily contact with distraught individuals in emotionally charged situations, to confront and answer accusations of rudeness and improper conduct." *Commonwealth v. Bender*, 248 Pa.Super. 504, 515, 375 A.2d 354, 359–60 (1977). Appellant's conduct may have been intemperate, unreasonable, or even unjustified, but we see no evidence of a reckless disregard for public inconvenience, annoyance, or alarm.

While we find appellant's reaction to the events which occurred to be distasteful, it was understandable. The

---

**3.** Whether Officer Finkle had the authority to break down appellant's door because he was in pursuit of appellant's husband, who had gone inside the trailer, is really irrelevant to appellant's conviction for disorderly conduct. Assuming that he did have that authority, it pertains more to appellant's husband's arrest than to appellant's reaction to that entry. We do note, however, that appellant's belief (mistaken or otherwise) in her justification in taunting the police would not vitiate her recklessness with regard to annoyance or alarm of members of the public in the vicinity. *See Commonwealth v. Hughes*, 270 Pa.Super. 108, 410 A.2d 1272 (1979).

police initially intruded into the life of appellant. It began with the breaking open of the locked door of her home and the entering by the officer. Officer Finkle himself testified as to how upset appellant got when he entered the room. We suspect that it is quite natural for a citizen to become aroused and excited upon such an encounter with a policeman. All of appellant's complaints in this short period of time involved the breaking and entering of her home. Her conduct could be accurately described as an excited reaction to the traumatic events concerning the sudden invasion of her home. At all relevant times, appellant was *inside her home* in the vicinity of the doorway through which Officer Finkle had entered. We find no conscious disregard of a substantial and unjustifiable risk that public annoyance or alarm would result from her conduct, or a gross deviation from the standard of conduct that a reasonable person would observe in her situation. On the meager evidence which comprises this case, there is nothing from which the required *mens rea* can be inferred.

Accordingly, we hold that the evidence was insufficient to establish beyond a reasonable doubt that appellant was guilty of disorderly conduct. The judgment of sentence is reversed and appellant is discharged.