COMMONWEALTH of Pennsylvania, Appellant,

v.

Kelly Jo HOCK, Appellee.

Superior Court of Pennsylvania.

Argued April 15, 1997.

Filed July 1, 1997.

and watched as Hock pulled her car into a parking place in front of her apartment building. *Id.* Believing Hock's license to be suspended "until sometime in the year 2000," the lawman pulled next to the parked vehicle.[1] *Id.* at 6. Officer Shank then asked Hock, who was still seated in the front seat of her car, "if she had her license back and if [he] could see it." *Id.* Hock responded that she had not been driving the vehicle. *Id.* Hock then exited her car and asked the lawman "why the police keep on harassing her." *Id.* at 7. Officer Shank replied that "after [he] checked her driver's record, she would be receiving a citation in the mail if her privileges were in fact still under suspension." *Id.* at 8. At this point, the situation grew ugly.

Hock walked away from the officer and towards her apartment building. *Id.* On the way she stated, "Fuck you, asshole." *Id.* Hock didn't shout or scream the profanity and there was nobody else in the area. *Id.* at 19, 21. Upon hearing this profanity, the lawman informed appellee that he was placing her under arrest for disorderly conduct. *Id.* Hock quickened her pace and continued to walk away from the lawman. *Id.* at 9. Officer Shank pursued appellee to the second floor of the apartment building and, as she reached the door of her apartment, he grabbed her right arm. *Id.* at 10. Hock pulled away from the officer and kicked him several times. *Id.* at 14. Then she curled her body into a ball with her arms and legs tight against her torso. *Id.* The officer's attempts to handcuff appellee were met with more kicks. *Id.* at 14–15. Finally, the officer was able to handcuff appellee, but not before receiving a cut finger and an injury to his wrist. *Id.* at 15–16.

Ultimately, Hock was charged with disorderly conduct, 18 Pa.C.S.A. § 5503(a)(4), and resisting arrest, 18 Pa.C.S.A. § 5104, for the April 13th episode. On October 20, 1995, she filed a pre-trial motion alleging that her arrest was unlawful and that all evidence obtained pursuant to the arrest should be suppressed and "all subsequent criminal charges

Daniel Schwartz, Asst. Dist. Atty., Lebanon, for Com., appellant.

Madelaine N. Baturin, Harrisburg, for appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

The Commonwealth appeals the trial court's order which found appellee Kelly Jo Hock's arrest to be unconstitutional and dismissed the charges against her. We reverse.

The record reveals the following facts: On the morning of April 13, 1995, Palmyra Police Officer Kenneth Shank observed appellee Kelly Jo Hock driving her vehicle on Arch Street in Palmyra Borough. N.T., 10/23/95 at 5. Officer Shank drove around the block

---

1. In fact, Hock's driving record subsequently revealed that her operating privileges had been suspended over thirty times. *Id.* at 6.

filed after th[e] arrest [should] be dismissed with prejudice." Pre-trial omnibus motion, 10/20/95 at 1. After presiding over a hearing on the matter, which was conducted on October 23, 1995, the trial court found in Hock's favor and ordered that the criminal counts against her be dismissed. This appeal by the Commonwealth follows.

At the outset, we note that Officer Shank clearly had the right to demand that Hock produce her license. 75 Pa.C.S.A. § 1511(a).[2] Hock was also obligated to display her vehicle license to the lawman. 75 Pa.C.S.A. § 6308(a).[3] Moreover, since Officer Shank clearly had reasonable suspicion that Hock had violated the law, he would have been authorized to use reasonable force to detain his suspect. *See* 75 Pa.C.S.A. § 6308(b)("Whenever a police officer ... has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, ... or the diver's license, or to secure other information as the officer may reasonably believe to be necessary to enforce the provisions of this title."); *Commonwealth v. Diaz*, 442 Pa.Super. 238, 659 A.2d 563, 570 (1995) ("A non-custodial detention or forcible stop occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes.").

Thus, it is clear that the lawman would have been authorized to forcibly detain Hock for an investigatory detention when she started to walk away. Nevertheless, as noted above, Officer Shank immediately informed the suspect that she was under arrest. This Court has stated that "traffic stops ... constitute investigative rather than custodial detentions, unless under the totality of the circumstances the conditions and duration of the detention become the functional equivalent of an arrest." *Commonwealth v. Douglass*, 372 Pa.Super. 227, 244, 539 A.2d 412, 421 (1988). Moreover, "whether an arrest has occurred depends upon the impression conveyed to the person detained, not upon the officers' subjective intentions." *Commonwealth v. Allen*, 452 Pa.Super. 200, 681 A.2d 778, 782 (1996). Instantly, Officer Hock unequivocally informed Hock that "she was under arrest for Disorderly Conduct." N.T. 10/23/95, at 8. As such, there is no question that the lawman's encounter with the suspect had become custodial. *See Allen, supra.* Accordingly, the Commonwealth's attempt to characterize Hock's subsequent actions as having occurred while resisting a non-custodial detention must fail.[4]

Our question next becomes whether Officer Shank possessed the requisite probable cause to arrest Hock after she had disobeyed his command to produce her license and cursed at him. Section 5503 defines the crime of disorderly conduct as follows:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creates a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

**2.** Section 1511(a) provides:

Every licensee shall possess a driver's license issued to the licensee at all times when driving a motor vehicle and shall exhibit the license upon demand by a police officer, and when requested by the police officer the licensee shall write the licensee's name in the presence of the officer in order to provide identity.

**3.** Section 6308(a) provides:

The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility ... and shall write their name in the presence of the police officer if so required for the purpose of establishing identity.

**4.** We note that, had this in fact been a non-custodial detention that Hock resisted, Officer Shank would have clearly been justified in arresting appellee for violating 18 Pa.C.S.A. § 5104, which is titled "Resisting arrest or other law enforcement." Section 5104 provides that "[a] person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from ... discharging any ... duty, the person ... employs means justifying or requiring substantial force to overcome the resistance."

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a).

Additionally, our Supreme Court has found that a violation of Section 5503(a) may occur when one utters "fighting words." *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54, 58 (1980); *Commonwealth v. Pringle*, 304 Pa.Super. 67, 450 A.2d 103, 107 (1982). The precise definition of "fighting words," however, is not easily attainable. The *Mastrangelo* Court quoted the language contained in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), which states that "fighting words" are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Mastrangelo, supra*. Further, in *Pringle*, this Court elaborated somewhat to find that "fighting words" are those that create a risk of "the incitation of lawless behavior." *Pringle, supra*.

 Instantly, Hock not only disobeyed a lawful command from a police officer, she affronted the lawman by telling him, "Fuck you, asshole." There is no doubt that this comment constitutes "fighting words." *See Mastrangelo, supra* ("Fucking pig," "nigger lover" and "cocksucker" were held to constitute "fighting words."); *Pringle, supra* ("Goddamn fucking pigs" was held to constitute "fighting words."). Moreover, we are also convinced that one who disobeys the lawful command of a police officer and insults the lawman with such an affront clearly "engages in fighting ... behavior" as the term is used in § 5503(a)(1).

 Before we can conclude that Officer Shank possessed probable cause to arrest Hock for disorderly conduct, however, we must first answer a crucial question. Since only Officer Shank witnessed Hock's actions, could Hock be found to have intended to cause or recklessly created a risk of **public** inconvenience, annoyance or alarm? The trial court did not believe so and reasoned as follows:

At the hearing, we determined that no persons other than [Hock] and the complaining officer had been involved in the incident, and that [Hock] had not raised her voice when making her remark to Patrolman Shank. We accordingly found that [Hock] did not intend to "cause public inconvenience, annoyance or alarm," and did not recklessly create a risk of public inconvenience, annoyance or alarm.

Opinion, 12/21/95 at 3.

We must disagree with the trial court's analysis. One needs only to look to Section 5503(c) to find that:

the word public means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503(c).

Instantly, Hock's actions occurred in front of her apartment house, which is clearly "a place to which the public or a substantial group has access." Moreover, the fact that only Officer Shank had the displeasure of hearing Hock's remarks, would not make appellee any less culpable. "[O]ne who exhibits disorderly behavior in a public place is guilty of disorderly conduct even if that behavior is directed at a single individual." *Commonwealth v. Young*, 370 Pa.Super. 42, 535 A.2d 1141, 1143 (citation omitted), *alloc. denied*, 518 Pa. 649, 544 A.2d 961 (1988).

Our inquiry is whether Hock's behavior recklessly created a risk of public alarm. *Id.* There is no question that Hock's words, which, while not shouted, were spoken loudly enough for Officer Shank to hear, and actions were such as to naturally incite an unlawful response from their recipient. While we would like to believe that we live in a civilized society, we cannot overlook the fact that certain opprobrious epithets will constitute such an affront to the addressee's honor and self-respect that a violent retaliatory response is assured. Such is the case instantly. Moreover, any violent response by Officer Shank would have unquestionably occurred in public. Thus, while Hock may

not have intended for her comments to have been overheard by anyone but the lawman, the lawman's reactions would have obviously affected anyone who happened by. The fact that the lawman demonstrated great restraint and kept his emotions in check does not absolve Hock from culpability.

■ It is true, however, that some Courts have held that "fighting words" directed at a police officer do not normally constitute disorderly conduct. These courts have based their determination upon the fact that law enforcement officials are trained to deal with emotionally charged situations and are under an affirmative duty not to retaliate. *See Swann v. Huntsville*, 455 So.2d 944 (Ala.Cr. App.1984); *People v. Justus*, 57 Ill.App.3d 164, 14 Ill.Dec. 836, 372 N.E.2d 1115 (1978); *People v. Slaton*, 24 Ill.App.3d 1062, 322 N.E.2d 553 (1974); *Chicago v. Blakemore*, 15 Ill.App.3d 994, 305 N.E.2d 687 (1973). Nevertheless, we do not believe that this approach is appropriate for Pennsylvania. Instead, we agree with the majority of states which "can conceive of no reason why a police officer, or other public official responsible for maintaining law and order, should have to be the object of obscenities and vulgarities of the type which, if addressed to a layman, would have a direct tendency to incite him to acts of violence." *Bale v. Ryder*, 290 A.2d 359 (Me.1972). *See Meyers v. State*, 253 Ark. 38, 484 S.W.2d 334 (1972); *City of St. Paul v. Morris*, 258 Minn. 467, 104 N.W.2d 902 (1960), *cert. denied*, 365 U.S. 815, 81 S.Ct. 696, 5 L.Ed.2d 693 (1961). It has been eloquently stated that "although it is the duty of a police officer to preserve the peace, yet he is like other human beings and under great stress of abuse may forget his official duty and fight back. He does not lose his human nature simply because he wears a star." *Duncan v. United States*, 219 A.2d 110, 112–13 (D.C.App.1966) (quoting *Pavish v. Meyers*, 129 Wash. 605, 225 P. 633, 634 (1924)). Finally, we also note our agreement with the late Justice Gibbs, then County Judge of Bronx County,:

> Gratuitous insolence to police officers tending to cause disturbance and disorder upon a public highway is far too common ... and should not be encouraged. It seems to me that it tends to lessen the respect of the community for law and order, which the police officer in the legitimate discharge of his duties represents."

*People v. Fenton*, 102 Misc. 43, 168 N.Y.S. 725 (1917). As such, we find that "fighting words" directed at a law enforcement officer have no less legal significance than those directed against any other citizen of our state. Accordingly, we conclude that Officer Shank was clearly justified in concluding that Hock's behavior, at a minimum, recklessly created a risk of public alarm and, thus, the lawman possessed probable cause to arrest her for disorderly conduct.[5]

■ Nevertheless, although the officer possessed probable cause to arrest Hock for disorderly conduct regarding her actions outside of the apartment building, it was her behavior while inside of the building that the Commonwealth premises its disorderly conduct charge upon.[6] Officer Shank testified that, while he attempted to effectuate a lawful arrest of appellee, she pulled away and kicked him several times. N.T., 10/23/95 at

---

**5.** We note that the trial court incorrectly cites to *Commonwealth v. Weiss*, 340 Pa.Super. 427, 490 A.2d 853 (1985), for the proposition that "[m]erely directing offensive language toward a police officer is not a valid basis for a charge of disorderly conduct." Our review of *Weiss* reveals that this Court never reached such a decision in that case. It is true that, in *Weiss*, this Court reversed the judgment of sentence of an appellant who had been convicted of disorderly conduct for shouting profanities at a police officer. Nevertheless, it is clear that the deciding factor in our determination was that "[a]t all relevant times, appellant was **inside her home**." 340 Pa.Super. at 435, 490 A.2d at 857 (emphasis original). Since Weiss's conduct did not occur in public, we found "no conscious disregard of a substantial and unjustifiable risk that public annoyance or alarm would result." *Id.* Consequently, it was clearly a mistake for the trial court, in the instant case, to read the *Weiss* decision as allowing our citizenry to verbally abuse our police force in public.

**6.** Specifically, Officer Shank charged Hock with 18 Pa.C.S.A. § 5503(a)(4) alleging only that she "did cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof by creating a hazardous and physically offensive condition by kicking Patrolman Kenneth M. Shank, a public servant, several times while Patrolman Kenneth M. Shank was in the performance of official duties." Criminal Complaint, 4/13/95.

**230**

14. Hock then curled her body into a ball and the officer's continued attempts to handcuff her were met with more kicks. *Id.* at 14–15. Before finally cuffing appellee, Officer Shank received a cut finger and an injury to his wrist. *Id.* at 15–16. Let there be no doubt that such behavior, of physically combatting a police officer who is lawfully carrying out his duties, clearly "creates a hazardous or physically offensive condition by [an] act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). Moreover, Hock's actions took place in the hallway of her apartment building, which allows one to conclude that her reckless activity was likely to affect persons in a place to which the public or a substantial group has access. *See* 18 Pa.C.S.A. § 5503(c). Accordingly, we find that the trial court erred in dismissing the charge of disorderly conduct against appellee.

Further, having established that Officer Shank did, in fact, possess probable cause to arrest Hock for disorderly conduct for her behavior outside of the apartment building, it necessarily follows that the trial court also erred in concluding that Hock could not be convicted of resisting arrest. The offense of resisting arrest is defined at 18 Pa.C.S.A. § 5104 as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

Instantly, we have found that Officer Shank was attempting to effectuate a lawful arrest. As such, Hock's resistance, which was only overcome through the exercise of substantial force, clearly could constitute a violation of § 5104.

Order reversed and case remanded. Jurisdiction is relinquished.

POPOVICH, J., concurs in the result.