J-A26033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RACHEL LYNN SCHOEN, | |
| Appellant | No. 1773 WDA 2017 |

Appeal from the Judgment of Sentence Entered October 30, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006707-2016

BEFORE:  BENDER, P.J.E., BOWES, J., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:            **FILED FEBRUARY 07, 2019**

Appellant, Rachel Lynn Schoen, appeals from the judgment of sentence of court costs and a fine of $100, imposed after she was convicted, following a non-jury trial, of public drunkenness and disorderly conduct.  Appellant challenges the sufficiency of the evidence to sustain her convictions, as well as the trial court's denial of her pretrial motion to suppress.  After careful review, we reverse.

The trial court summarized the facts of Appellant's case, as follows:

> On October 11, 2015, Sergeant Timothy Harvison ("Sgt. Harvison") and Officer Gregory Laepple ("Officer Laepple") were dispatched at approximately 2:30 a.m. to [Appellant's] residence in response to a neighbor's complaint of a block party. Upon arrival, both Sgt. Harvison and Officer Laepple heard music playing while inside their running patrol vehicles. The party included as many as fifteen people in the yard on the property. Sgt. Harvison and Officer Laepple were met at the front of [Appellant's] house by Thomas Versharen ("Mr. Versharen"),

[Appellant's] boyfriend and co-defendant, where they asked him to turn the music down. Sgt. Harvison noticed a strong odor of alcohol coming from Mr. Versharen and that Mr. Versharen appeared visibly intoxicated. The officers asked Mr. Versharen to turn the music down multiple times, but Mr. Versharen was argumentative and continued to debate the volume of the music with the officers. The officers heard more noise coming from the backyard, and Sgt. Harvison proceeded to walk towards the fence. At that point, Mr. Versharen put his hand on Sgt. Harvison's shoulder to prevent Sgt. Harvison from going any further. After Sgt. Harvison told Mr. Versharen not to touch him, they continued to debate the music. Mr. Versharen then went into the gated area and closed the gate behind him, refusing to comply with Sgt. Harvison's commands. At that point, Sgt. Harvison notified Mr. Versharen that he was going to be placed under arrest.

Sgt. Harvison then opened the gate and proceeded to arrest Mr. Versharen, but Mr. Versharen retreated into the middle of the backyard. Sgt. Harvison followed Mr. Versharen into the yard, and Officer Laepple followed behind. At that point, both officers attempted to place Mr. Versharen in handcuffs, but Mr. Versharen resisted. The officers told Mr. Versharen to stop resisting multiple times, but Mr. Versharen continued not to comply with their commands.

While continuing to place Mr. Versharen in custody, Officer Laepple noticed [Appellant] coming from the right and toward Sgt. Harvison. Sgt. Harvison testified that [Appellant] jumped on his back three different times while attempting to place Mr. Versharen under arrest. The third time occurred while Sgt. Harvison was pointing his Taser at Mr. Versharen. At that point, Sgt. Harvison took [Appellant] to the ground. Sgt. Harvison testified that there was a strong odor of alcohol coming from [Appellant] as he and Officer Laepple were escorting her to the patrol car. After being placed in handcuffs, [Appellant] was yelling and screaming in a place where neighboring houses were close together. [Appellant] continued screaming even while inside the police station until she passed out.

Trial Court Opinion (TCO), 3/9/18, at 2-4.

Appellant was charged with obstructing the administration of law or other government functions, disorderly conduct, harassment, and public

drunkenness. Prior to trial, she filed a motion to suppress, challenging the legality of the officers' entering her property and her subsequent arrest. Following a hearing, the court denied that motion. Appellant's case proceeded to a non-jury trial, at the close of which the court convicted Appellant of disorderly conduct and public drunkenness, but acquitted her of the other charges. On October 30, 2017, the court sentenced Appellant to pay summary court costs and a fine of $100.

Appellant filed a timely post-sentence motion, which the court denied. She then filed a timely notice of appeal, and she also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a responsive opinion on March 9, 2018. Herein, Appellant presents three questions for our review:

I. Whether the evidence was insufficient to support [Appellant's] conviction for public drunkenness where the Commonwealth failed to prove (i) that she appeared in any public place and (ii) that she was manifestly under the influence of alcohol or a controlled substance to such a degree that she might endanger herself or others or property or annoy people nearby?

II. Whether the evidence was insufficient to support [Appellant's] conviction for disorderly conduct where the Commonwealth failed to prove (i) that she created a hazardous or physically offensive condition and (ii) that she took any action with the intent to cause public inconvenience, annoyance or alarm or recklessly created the risk of the same?

III. Whether the trial court erred in denying [Appellant's] omnibus pre-trial motion seeking the suppression of evidence and dismissal of charges where law enforcement entered her property in violation of her rights secured by the Fourth and Fourteenth Amendments to the United

States Constitution, and/or Article I, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 6 (unnecessary capitalization omitted).

In Appellant's first two issues, she challenges the sufficiency of the evidence to sustain her convictions.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno**,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell**,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

First, we address Appellant's public drunkenness conviction. That offense is defined, in pertinent part, as follows:

> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, except those taken pursuant to the lawful order of a practitioner, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

18 Pa.C.S. § 5505 (footnote omitted).

Here, Appellant argues that the Commonwealth's evidence failed to demonstrate that she appeared in a public place, as she was in her privately-owned backyard, and she only exited the yard when forced to do so by the

police. Notably, the Commonwealth concedes that the cases relied upon by Appellant - discussed *infra* - "support her argument that a fenced backyard does not qualify as a 'public place' under the circumstances of this case." Commonwealth's Brief at 12. We agree.

As Appellant recognizes, section 5505 does not define 'public place.' However, this Court has observed that the term has been defined in two other provisions of the Crimes Code. ***See Commonwealth v. Meyer***, 431 A.2d 287, 289 (Pa. Super. 1981). First, 18 Pa.C.S. § 5902 (Prostitution and related offenses) defines "public place" as "[a]ny place to which the public or any substantial group thereof has access." Second, 18 Pa.C.S. § 5503 (Disorderly conduct) states:

> As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503(c).

In support of her argument that she did not 'appear in a public place,' Appellant relies on several cases, including ***Commonwealth v. Biagini***, 655 A.2d 492 (Pa. 1995). There, our Supreme Court determined that there was no probable cause to arrest Biagini for public drunkenness where he "was allegedly intoxicated in his home and on his porch…." ***Biagini***, 655 A.2d at 495. Despite that Biagini was screaming loudly enough in the rear of his home for a patrolling officer out front to hear him, the Court concluded that because

Biagini was on his own private property, he "had not 'appeared in any *public* place manifestly under the influence of alcohol….'" *Biagini*, 655 A.2d at 495 (citation omitted; emphasis added).

In *Meyer* — another case on which Appellant relies — Meyer was escorted by police from a private club and arrested outside for public drunkenness. *Meyer*, 431 A.2d at 288. This Court concluded that the club was not a 'public place' as contemplated by the public drunkenness statute, as "the public at large" did not have the right to enter the club or use its facilities. *Id.* at 289. We also held that, "to be found guilty of public drunkenness, the accused must be in the 'public place' voluntarily." *Id.* at 290. Thus, although Meyer had been arrested outside the club, his conviction for public drunkenness could not stand because he had been escorted outside by police. *Id.*

Like the facts of *Biagini*, Appellant was present on her own private property when police responded to the noise complaint. The altercation between Appellant and Sergeant Harvison also occurred in her backyard. While Appellant yelled and screamed after the police removed her from her property and took her to the police station, she was clearly not in those public places voluntarily.

The trial court erroneously relies on *Commonwealth v. Whritenour*, 751 A.2d 687 (Pa. Super. 2000), to support its conclusion that Appellant's public drunkenness conviction can stand. In *Whritenour*, we held that a road in a gated neighborhood was 'public' because the road "was traversed by

members of the community and their invitees or licensees." *Id.* at 688. Here, however, Appellant convincingly argues that her "backyard is not akin to a community-owned road. It is her private property, which belongs absolutely to her and is closed to the community." Appellant's Brief at 18. Therefore, *Whritenour* is distinguishable. We also conclude that the court's reliance on *Commonwealth v. Fedorek*, 946 A.2d 93 (Pa. 2008), is unconvincing, as that case addressed only the requirements for sustaining a conviction for disorderly conduct graded as a misdemeanor of the third-degree, not the elements of the offense of public drunkenness.

In sum, we agree with Appellant that her conviction for public drunkenness cannot stand, as the evidence failed to demonstrate that she 'appeared in a public place' while intoxicated. Therefore, we reverse her conviction for that offense.[1]

In Appellant's second issue, she challenges the sufficiency of the evidence to support her disorderly conduct conviction under section 5503(a)(4):

> **(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> ***

---

[1] Given this disposition, we need not address Appellant's argument that she was not intoxicated to the degree required to sustain her public drunkenness conviction.

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a)(4).[2]

"We have defined the relevant terms of subsection(a)(4) as follows: A 'hazardous condition' is a condition that involves danger or risk, particularly of injuries resulting from public disorders." ***Commonwealth v. N.M.C.***, 172 A.3d 1146, 1150 (Pa. Super. 2017) (citation, quotation marks, and brackets omitted). "Although a precise definition of 'physically offensive condition' is elusive, this term encompasses direct assaults on the physical senses of members of the public." ***Id.*** (citation omitted).

In this case, the Commonwealth contends that Appellant's act of jumping on Sergeant Harvison's back created a hazardous or physically offensive condition constituting disorderly conduct under section 5503(a)(4). Appellant, however, argues that her conviction cannot stand because,

_____

[2] The Commonwealth notes that it is unclear under "exactly which subsection of 18 Pa.C.S.[] §[]5503 [A]ppellant was convicted…." Commonwealth's Brief at 17. Appellant was charged with violating section 5503(a)(1), but the sentencing order stated that she was convicted of violating section 5503(a)(4). The Commonwealth acknowledges that, "the signed sentencing order takes precedence over oral statements of the sentencing court not incorporated into that order." Commonwealth's Brief at 20 (quoting ***Commonwealth v. Kubiac***, 550 A.2d 219, 229 (Pa. Super. 1988). Thus, the Commonwealth "assumes that [A]ppellant was convicted of violating subsection (a)(4)." ***Id.*** at 20. However, in the trial court's opinion, it suggests that Appellant was convicted of disorderly conduct under subsection (a)(2). In her reply brief, Appellant objects to the court's analysis, stressing that she was not charged with an offense under that provision. Appellant's Reply Brief at 7. Therefore, Appellant offers argument only pertaining to subpart (a)(4). Given the parties' positions, and the record in this case, we will only analyze the sufficiency of the evidence under subpart (a)(4).

the evidence does not reveal that [she] possessed the necessary *mens rea* for disorderly conduct. "The *mens rea* requirement of this statute demands proof that [a defendant] by his actions intentionally or recklessly created a risk or caused a public inconvenience, annoyance, or alarm." ***Commonwealth v. Gilbert***, 674 A.2d 284, 286 (Pa. Super. [] 1996). Recklessness under the statute denotes a "conscious disregard of a substantial and unjustifiable risk that public annoyance or alarm would result from her conduct, or a gross deviation from the standard of conduct that a reasonable person would observe in her situation." ***Commonwealth v. Weiss***, 490 A.2d 853, 857 (Pa. Super. [] 1985).

Appellant's Brief at 23-24.

Appellant relies on this Court's decision in ***Weiss***, arguing that it is analogous to her case. There, the evidence demonstrated that Weiss was inside her home at 11:00 p.m. when a police officer broke open her locked door, entered the home, and arrested Weiss's husband. ***Weiss***, 490 A.2d at 853-54. During the one-minute-long incident, Weiss "started to yell and use various obscenities, telling the officer to get out of her house and off her property." ***Id.*** at 854. In reversing Weiss's conviction for disorderly conduct based on these facts, we concluded that her conduct did not demonstrate an intent to cause *public* inconvenience, annoyance, or alarm. ***Id.*** at 857. We stressed that, "[a]ll of [the] appellant's complaints … involved the breaking and entering of her home[,]" and "[a]t all relevant times, [the] appellant was *inside her home* in the vicinity of the doorway through which [the] [o]fficer … had entered." ***Id.*** (emphasis in original).

Appellant contends that here, as in ***Weiss***, her conduct occurred on her private property and "[n]othing in the record suggests that [she] intended to

cause *public* annoyance or alarm or recklessly created a risk of such annoyance or alarm." Appellant's Brief at 25 (emphasis in original). We agree. While Appellant was not *inside* her home, she was inside her fenced-in backyard when she jumped on Sergeant Harvison's back. As in **Weiss**, nothing in the record demonstrates that Appellant intended to cause alarm or annoyance to the public; rather, the evidence established that she jumped on Sergeant Harvison in order to impede the officer's arrest of her boyfriend. Moreover, Appellant cannot be said to have recklessly created a risk of public alarm where nothing in the record demonstrates that the public could see into her yard to observe her conduct toward the sergeant.

We also find **Commonwealth v. Mauz**, 122 A.3d 1039, 1041 (Pa. Super. 2015), to be instructive in this case. There, the

> [a]ppellant was in his yard when he shouted … obscene remarks to [the victim], who was in her yard at the time with her boyfriend and several other people. A five or six foot high fence separated the two properties. The record does not reflect that anyone other than [the victim] heard [the] [a]ppellant's remarks, nor does the record reflect that [the] [a]ppellant's remarks could have reached anyone not present in the yard of [the victim] or [the] [a]ppellant.

**Id.** at 1042 (internal citations to the record omitted). Based on these facts, our Court held that,

> [s]ince both the speaker and the recipient of the offensive remarks were present in respective yards, we believe the evidence is insufficient to establish that [the] [a]ppellant acted with the intent to cause public annoyance, inconvenience or alarm. We cannot conclude [the] [a]ppellant acted with the intent to create public annoyance when he made his offensive remarks in a private setting and the remarks apparently were discernible only to [the victim].

- 10 -

*Id.* 1042-43. We stressed that,

> "[t]he offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." ***Commonwealth v. Maerz***, 879 A.2d 1267, 1269 (Pa.Super.2005) (quoting ***Commonwealth v. Hock***, 556 Pa. 409, 728 A.2d 943, 947 (1999)). "It has a specific purpose; it has a definite objective, it is intended to preserve the public peace." ***Id.*** (emphasis added). Indeed, our courts have repeatedly emphasized that the goal of § 5503 is to protect the public. ***Commonwealth v. Fedorek***, 596 Pa. 475, 946 A.2d 93, 100 (2008) ("Certainly, Section 5503 is aimed at protecting the public from certain enumerated acts."); ***Hock***, 728 A.2d at 946 ("The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.").

*Id.* at 1041.

Here, as in ***Mauz***, Appellant was in her private, fenced-in backyard when she jumped on Sergeant Harvison. There was no evidence that she intended the public to even see this act, let alone be inconvenienced, annoyed, or alarmed by it. Therefore, we conclude that the evidence was insufficient to sustain Appellant's conviction of disorderly conduct under section 5503(a)(4). Accordingly, we reverse her judgment of sentence for that offense, as well as for public drunkenness. Given this disposition, we need not address Appellant's third issue challenging the court's denial of her pretrial motion to suppress.

Judgment of sentence reversed. Jurisdiction relinquished.


Judgment Entered.

- 11 -

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/7/2019