J-S01011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD ANDREW KESSELRING, | : | |
| | : | No. 1205 MDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence June 13, 2017
in the Court of Common Pleas of Adams County,
Criminal Division at No(s):  CP-01-CR-0001051-2016

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:             **FILED MARCH 21, 2018**

Ronald Andrew Kesselring ("Kesselring") appeals from the judgment of sentence entered following his conviction of two counts of hindering apprehension or prosecution, and one count of obstructing administration of law or other governmental function ("Obstruction").[1]  Kesselring also has filed with this Court a "Petition to Proceed *Pro Se*, Amend Appellant's Brief and for an Extension of Time" ("Petition").  We deny Kesselring's Petition, and affirm

---

[1] *See* 18 Pa.C.S.A. §§ 5105(a)(1), (5); 5101.

J-S01011-18

the judgment of sentence.[2]

The trial court aptly summarized the factual history underlying the instant appeal as follows:

On August 18, 2016, at approximately 4:30-4:45 p.m., Officer Gregory Morehead [("Officer Morehead"),] of the Reading Township Police Department[,[FN1]] and Sheriff's Deputies [Norman] McNeal [("Deputy McNeal")] and [Timothy] Beall [("Deputy Beall"),[FN2]] went to Café's Motorcycle Shop [("Café's"),[FN3]] located at 2630 Hunterstown/Hampton Road in Reading Township, Adams County[,] to serve a domestic relations bench warrant on Nathan Brough [("Brough")], an employee at the motorcycle shop. As law enforcement approached and turned into Café's parking lot, they observed two males, [Kesselring] and Brough, standing in the parking lot. Deputies Beall and McNeal testified [that Kesselring] and Brough made eye contact with them and then quickly went inside the building and closed and locked the door. [Deputy McNeal testified that he tried opening the door, but found that it was locked.]

---

[FN1] Officer Morehead was in full uniform and a marked police vehicle.

[FN2] Deputies McNeal and Beall were in uniform and riding together in an unmarked vehicle.

---

[2] Kesselring's counsel filed an advocate's appellate brief for Kesselring on November 13, 2017. On November 29, 2017, Kesselring filed his Petition requesting permission to proceed *pro se*, and for an extension of time to amend his appellate brief to include additional issues. Petition, 11/29/17, at 2. Our Supreme Court has held that there is no right to hybrid representation. *Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993). "Moreover, once the brief has been filed, any right to insist upon self-representation has expired." *Commonwealth v. Jette*, 23 A.3d 1032, 1044 (Pa. 2011). Because Kesselring filed his Petition after his counsel had filed an appellate brief on Kesselring's behalf, we cannot grant Kesselring the relief he seeks. We therefore deny Kesselring's Petition.

- 2 -

FN3 [Kesselring] owns Café's [].

---

Deputy McNeal testified [that] he knocked on the door, announced his presence and that he had a warrant for Brough. While this was occurring, Officer Morehead and Deputy Beall went to the side and then the back of the building. [Kesselring] answered approximately two minutes after Deputy McNeal began knocking on the door. Deputy McNeal testified [that] he told [Kesselring] they had a warrant for Brough and needed to talk to Brough. [Kesselring] told Deputy McNeal that Brough "wasn't here, he left already, that his vehicle was broken and he got a ride."

Deputy McNeal entered the building and began searching for Brough. He testified that during the search[, Kesselring] was loud and yelling. At some point[,] Officer Morehead entered the building through an open back door and started searching for Brough. Deputy Beall remained in the back of the building in case Brough tried to leave. [Deputy Beall stated that he stayed in the back because he "wanted to be at a vantage point where he could see if [] Brough fled from the building."] Officer Morehead testified [that] approximately ten minutes into his search of the building[,] he heard "a pretty heated conversation between Deputy McNeal and [] Kesselring on the first floor area. Officer Morehead took [Kesselring] outside to "diffuse the situation." Officer Morehead eventually rejoined Deputy McNeal back inside the building, and continued searching for Brough. After approximately 30-40 minutes of searching, Deputy McNeal found Brough hiding in the insulation and duct work in a small "crawl space" area on the second floor. Brough was apprehended and arrested.

Trial Court Opinion, 8/29/17, at 1-3 (citations to record and some footnotes omitted).

A jury subsequently convicted Kesselring of the above-described charges, after which the trial court revoked Kesselring's bail in an unrelated probation revocation case. Following a pre-sentence investigation, the trial court sentenced Kesselring to an aggregate prison term of 10-24 months. The

trial court imposed the sentence consecutive to the sentence imposed in Kesselring's unrelated probation revocation case. Thereafter, Kesselring filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Kesselring presents the following claims for our review:

1. Did the Commonwealth fail to present sufficient evidence of a "crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition," as required by 18 Pa.C.S.A. [§] 5105, where the only evidence presented at trial was testimony that Sheriffs had a "domestic relations" warrant for another individual, and failed to introduce said warrant?

2. Did the Commonwealth fail to present sufficient evidence of an affirmative act to hinder the execution of a warrant, as required by 18 Pa.C.S.A. § 5101, where [Kesselring] failed to open the door in a timely fashion?

**NOTE:** …[T]hough [Kesselring] challenges the sufficiency of the evidence for two convictions under Section 5105, it will be addressed in one Question, as it involves the same factual and legal concerns.

Brief for Appellant at 4.

In his first claim, Kesselring challenges the sufficiency of the evidence underlying his conviction of hindering apprehension or prosecution. *Id.* at 11. Kesselring argues that the Commonwealth's "[m]ere reference to an alleged 'domestic relations warrant,' without allegation of a crime, is not sufficient to establish that [Kesselring] hindered apprehension of someone for a 'crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition.'" *Id.* (quoting 18 Pa.C.S.A. § 5105).

- 4 -

Specifically, Kesselring argues that the Commonwealth failed to introduce the actual warrant into evidence, and there was no allegation that Brough had committed a crime. Brief for Appellant at 11. Relying on this Court's holding in **Commonwealth v. Johnson**, 100 A.3d 207 (Pa. Super. 2014), Kesselring contends that, although the officers stated that they were at his residence to serve "an active domestic relations warrant on another individual[,]" they did not testify as to the underlying basis for the warrant. Brief for Appellant at 13-14. Kesselring takes issue with the trial court's conclusion that the mere existence of the domestic relations warrant provided sufficient evidence of a crime by Brough. **Id.** at 14. Kesselring proffers that a domestic relations bench warrant is not necessarily premised on probable cause of criminal contempt, and can be issued for non-criminal purposes. **Id.** According to Kesselring, "[n]othing in the requirements for issuance of a domestic relations warrant requires a court to find that a person willfully fails or refuses to appear." **Id.** at 15 (internal quotation marks omitted). Kesselring acknowledges that the only evidence regarding the nature of the warrant was provided by Brough, the subject of the warrant. **Id.** at 16. Kesselring argues that Brough's testimony failed to establish that Brough had consciously disregarded a court order supporting criminal contempt. **Id.** at 17.

In reviewing a challenge to the sufficiency of the evidence, we apply the following standard and scope of review:

> There is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn

- 5 -

therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Morales*, 91 A.3d 80, 87-88 (Pa. 2014).

The Crimes Code defines the crime of hindering apprehension or prosecution as follows:

**(a)** *Offense defined.* — A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, he:

**(1)** harbors or conceals the other;

…

or

**(5)** provides false information to a law enforcement officer.

18 Pa.C.S.A. § 5105(a)(1), (5).

In *Johnson*, upon which Kesselring relies, twenty FBI agents and United States Marshalls went to the apartment of the defendant to execute an arrest warrant for Rodney Thompson ("Thompson"). *Johnson*, 100 A.3d at 208. Law enforcement officers knocked on the defendant's door, announced that they were police officers, and said that they had an arrest warrant for Thompson. *Id.* Initially, no one came to the door. *Id.* However, after law

enforcement knocked again, the defendant inquired as to their identity. *Id.* Upon the officers identifying themselves as law enforcement, the defendant asked them to wait while she dressed. *Id.* About five minutes later, officers heard someone running within the apartment, after which they attempted to force open the apartment door. *Id.* As they did so, the defendant opened the door, but then denied that anyone was in the apartment. *Id.* The defendant further denied knowing Thompson, when shown his picture. *Id.* Officers then observed an open window, and Thompson running outside the window, on the roof. *Id.* The defendant was arrested and ultimately convicted of hindering apprehension or prosecution, pursuant to 18 Pa.C.S.A. § 5105(a)(1). *Johnson*, 100 A.3d at 208.

On appeal, the defendant challenged the sufficiency of the evidence, arguing that the Commonwealth had failed to produce the arrest warrant for Thompson at her trial. *Id.* at 209. The Commonwealth countered, arguing that evidence of the underlying crime, which prompted the official action, is not required to sustain the conviction. *Id.* Ultimately, this Court concluded that the evidence was not sufficient to sustain the defendant's convictions. *Id.* at 214. In so holding, this Court explained that

> [t]he Commonwealth offered no evidence as to why Thompson was wanted or whether it was in connection with a crime, or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition. **It did not place the warrant into evidence and no witness testified regarding Thompson's purported crime.** In essence, although the Commonwealth offered evidence from which one might infer that [the defendant] intended to hinder the apprehension of

Thompson, it did not offer proof that Thompson was being sought for commission of a "crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition[.]" 18 Pa.C.S.[A.] § 5105(a)(1). The fact that the Commonwealth offered evidence that police officers apprised [the defendant] that they had a federal warrant, even an arrest warrant, was not enough to satisfy this element. Nor do we find persuasive the Commonwealth's argument that Thompson's threat to kill [the defendant] constituted circumstantial evidence that he was an outstanding felon. In short, the Commonwealth failed to prove an element of the offense: that Thompson was being sought for commission of a crime or any of the statute's other enumerated violations.…

*Johnson*, 100 A.3d at 214 (emphasis added).

By contrast, in the instant case, Officer McNeal testified that on August 18, 2016, he was assigned to serve a Domestic Relations bench warrant for Brough, at 2630 Hunterstown/Hampton Road in Reading Township, Pennsylvania. N.T., 4/4/17, at 38. Officer McNeal stated that, upon arriving at Café's, he saw Kesselring standing with Brough. *Id.* at 41. According to Officer McNeal, Kesselring and Brough "saw us, they turned around, the subject [Brough] went in first, [] Kesselring followed and closed the door." *Id.* After exiting his vehicle, Officer McNeal proceeded to the door used by Kesselring and Brough, knocked on the door and stated, "Adams County Sheriff's Office. I need you to come to the door and open it." *Id.* at 42. No one responded at that time. *Id.* Officer McNeal indicated that he continued to knock on the door and demand entry. *Id.* at 43. Within about two minutes, Kesselring responded to the door. *Id.* at 44. Officer McNeal testified as follows, regarding what next transpired:

- 8 -

**I explained to [] Kesselring [that] we had a warrant for the subject and we needed to speak with him.** He[,] in turn[,] informed us [Brough] wasn't here, he left already, that his vehicle was broken and he got a ride. I explained to [] Kesselring we just observed him, along with the subject we were looking for, just enter the business and we needed to speak with him. He made the statement to the effect [that] we close at five. And I apologize for my language. I don't have time for this shit. He then—I explained to him we needed to come in and search the place. He said I don't have time for this, I have an appointment. I told him he didn't have an option in the matter[,] we were coming in and I made entry.

…

I made entry. I believe Officer Morehead came in shortly behind me. Kesselring's mannerism was loud. In my opinion[,] he was trying to hinder my search by announcing where we were to help the subject know where we were. He was almost like borderline belligerent.

…

As I was looking at the common spaces where the subject could hide[,] [] Kesselring was behind me yelling. He was yelling loud enough he could be heard throughout the building….

*Id.* at 44-45 (emphasis added). Officer McNeal indicated that he eventually found Brough hiding inside an opening where the insulation and duct work for the building were located. *Id.* at 49-50. Officer McNeal testified that he had "a warrant for a person[,]" and described the warrant as a "Domestic Relations warrant." *Id.* at 54, 55.

Officer Beall described Domestic Relations bench warrants as follows:

Domestic Relations bench warrants come … through Domestic Relations cases. They originate as a result of a [d]efendant either failing to appear for a court appearance or being found in contempt of court and as a result[,] a bench warrant being issued for their arrest.

- 9 -

…

> With domestic relations bench warrants specifically[,] if it's a court day[,] the [d]efendant would be brought in for a court hearing. If it's a non-court day[,] the subject would be transported to the local prison[,] and then arrangements would be made for the [d]efendant to be brought in on the next available court day.

*Id.* at 59-60.

In his testimony, Brough confirmed that a Domestic Relations bench warrant had been issued against him. *Id.* at 94. When asked whether "that means that you didn't show up for [a] Domestic Relations [c]ourt appearance[,]" Brough responded, "Right." *Id.*

Thus, the testimony established that a Domestic Relations warrant had been issued for Brough, for his failure to appear for a hearing. The Domestic Relations Code provides that

> [a] person who willfully fails or refuses to appear in response to a duly served order or other process under this chapter may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (1)  Imprisonment for a period not to exceed six months.
>
> (2)  A fine not to exceed $ 500.
>
> (3)  Probation for a period not to exceed six months.

23 Pa.C.S.A. § 4344. As this Court has explained,

> contempt can be criminal or civil in nature, and depends on whether the core purpose of the sanction imposed is to vindicate the authority of the court, in which case the contempt is criminal, or whether the contempt is to aid the beneficiary of the order being defied, in which case it is civil.

*Commonwealth v. Bowden*, 838 A.2d 740, 760 (Pa. 2003). "[T]he characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive." *Orfield v. Weindel*, 52 A.3d 275, 281 (Pa. Super. 2012) (citation omitted).

Contrary to Kesselring's claim, the Commonwealth presented sufficient evidence to establish that a Domestic Relations warrant was issued for Brough's failure to appear before the Domestic Relations court, which, pursuant to section 4344, is subject to criminal contempt penalties. *See Bowden*, 838 A.2d at 760. We therefore conclude that the evidence is sufficient to establish the criminal conduct underlying the Domestic Relations bench warrant. Consequently, we cannot grant Kesselring relief on this claim.

Kesselring next claims that the evidence was insufficient to sustain his conviction of obstruction. Brief for Appellant at 18. Kesselring argues that the Commonwealth failed to present evidence that he had intentionally hindered police officers from executing a warrant "through physical interference, where [Kesselring] closed the door prior to any notice of a warrant, and where he merely delayed opening the door through inaction." *Id.* (emphasis omitted). Kesselring acknowledges that in *Johnson*, this Court recognized an affirmative duty for individuals to consent to such searches "under pain of criminal penalty." *Id.* However, Kesselring argues that 18 Pa.C.S.A. § 5101 requires "affirmative interference with governmental

functions." Brief for Appellant at 19 (quoting 18 Pa.C.S.A. § 5101). Kesselring argues that the ***Johnson*** court criminalized a peaceful means of refusing consent to search, and, accordingly, is unconstitutional in its application. Brief for Appellant at 21.

Pursuant to the Crimes Code,

> [a] person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

Initially, we point out that a three-judge panel of this Court cannot overrule another three-judge panel of the Superior Court. ***Commonwealth v. Beck***, 78 A.3d 656, 659 (Pa. Super. 2013). On this basis, we cannot grant Kesselring relief on his claim.

In addition, as explained by this Court in ***Johnson***, "[t]he interference need not involve physical contact with the government official as he performs his duties." ***Johnson***, 100 A.3d at 215. For example, in ***Commonwealth v. Mastrangelo***, 414 A.2d 54 (Pa. 1993), our Supreme Court upheld a defendant's conviction of violating section 5101, where the defendant had verbally abused a parking enforcement officer upon receiving a parking ticket,

- 12 -

which deterred the officer from subsequently performing his duties. *Id.* at 265.

As set forth above, the evidence established that once Brough and Kesselring had entered the building, Kesselring closed and locked the door, and then delayed responding to Officer McNeal's knock and instructions to open the door. N.T., 4/4/17, at 44. Kesselring wrongfully told Officer McNeal that Brough had left Café's, and hindered Officer McNeal's search for Brough by belligerently yelling and announcing Officer McNeal's location throughout the search. *Id.* at 44-45. Thus, the evidence was sufficient to sustain Kesselring's conviction of obstruction, and Kesselring is not entitled to relief on his claim.

Petition denied. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/21/2018