J-S10014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PANNA CHIBBER | : | |
| | : | |
| Appellant | : | No. 2219 EDA 2017 |

Appeal from the Judgment of Sentence June 20, 2017
In the Court of Common Pleas of Lehigh County Criminal Division at No(s):
CP-39-CR-0003296-2016

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY BOWES, J.:                                   **FILED JULY 17, 2018**

Panna Chibber appeals from the June 20, 2017 judgment of sentence of $200 in fines, which was imposed after she was found guilty of the summary offenses of harassment and disorderly conduct.  We affirm.

The facts were summarized by the trial court as follows:

> Tonya Hussett and her husband, along with their five children, live at [99] Jackson Street, Whitehall, Lehigh County, Pennsylvania.  They have been residing in that home for the past seven to eight years.  The rear of Ms. Hussett's property abuts Woodside Alley.  The Appellant's driveway is located across the alleyway and leads to the rear of her home, located [at] [88] Harding Circle, Whitehall, Lehigh County, Pennsylvania.  There is a basketball hoop located in the rear of Ms. Hussett's property, facing Woodside Alley.
>
> From the time that the Hussetts took residence of their property in 2010, their adolescent and teenage boys have played basketball in Woodside Alley.  Though not every day, the boys shoot hoops throughout the spring and summer time.  Ms. Hussett testified that on numerous occasions, the Appellant would yell at the boys, at times addressing them with racial

slurs, such as "monkey" or "nigger." Ms. Hussett advised her children to be mindful of where the basketball landed as they played and to keep it away from the Appellant's rear property. On February 10, 2012, Ms. Hussett observed that while her sons were playing basketball in Woodside Alley, the Appellant had exited her home and called the boys derogatory names, yelling at them, [and] ultimately throwing a bottle at them.

Ms. Hussett addressed the Appellant, admonishing her for her behavior and observing that throwing the bottle could have resulted in one of the children being struck in the head. Ms. Hussett determined that she could no longer handle the dispute and called the Whitehall Police Department. When she informed the Appellant that she was going to call the police, the Appellant told her to go ahead and that the police would "lock her black ass up." Ms. Hussett ultimately did call the police and filed a report.

On May 31, 2013, Ms. Hussett and her four[-]year[-]old son were outside attempting to play basketball with a neighbor's child. The Appellant came out of her home and onto her second story balcony to tell Ms. Hussett and the children to stop bouncing the ball. The basketball, at certain times due to the four[-]year[-]old's lack of basketball skill, rolled onto the bottom portion of the Appellant's driveway. The Appellant began to take pictures of Ms. Hussett and the children with a cellular telephone. Ms. Hussett firmly directed her to stop taking pictures of her son.

On May 17, 2014, the Whitehall Police were again summoned to the area of Woodside Alley. Ms. Hussett called the police when she noted a gold[-]colored car circling her street and the alleyway. The car paused in front of Ms. Hussett's home and [the driver] pointed at it. Ms. Hussett believed that she saw the Appellant driving the vehicle.

On April 25, 2015, Ms. Hussett hosted a 14th birthday party for her son, Shavar. Shavar invited approximately five other teens to their home and Ms. Hussett provided the boys with pizza. After they ate, the boys asked if they could go outside to play basketball. The weather was pleasant and Ms. Hussett gave her permission. Ms. Hussett remained in her kitchen but had a view of the basketball area through the window. At some point, Ms. Hussett saw the Appellant come

outside of her home and heard her yell at the boys, calling them "monkey," "asshole," and the "N word." Notes of Testimony, June 20, 2017, p. 55.

At approximately 8:30 p.m. that evening, Officer Quadir Carter of the Whitehall Police Department was dispatched to the area of 1699 Jackson Street, Whitehall, Lehigh County, Pennsylvania for a report of disorderly people. Upon his arrival 7 to 8 minutes later, Officer Carter maneuvered his patrol vehicle down Woodside Alley, which runs parallel to Jackson Street, and is not heavily travelled. Officer Carter observed four or five teenage boys, [whom] he approximated to be between 13 and 17 years old, playing basketball. Officer Carter, dressed in full police uniform and driving a marked police vehicle, approached the teenagers. Because he was unsure of the specific disorderly behavior complained about, Officer Carter approached the boys and asked them if they had seen any disorderly people in the area. The boys suggested to Officer Carter that it was probably their neighbor (later identified as the Appellant) complaining about them playing basketball. The officer found the boys to be very cooperative and told them that they could continue to play basketball because the officer did not find such behavior to be disorderly.

As Officer Carter attempted to leave the area, the Appellant approached his vehicle and told the officer that the boys playing basketball were being disorderly in that they were bouncing the basketball and had been playing basketball throughout the day. Selbourne Hussett, a family member of one of the teenagers, also approached Officer Carter, and told him that the boys were merely playing basketball in the alley and were not doing anything else. Officer Carter left the area and did not make any arrests that evening.

Ms. Hussett reported to the Whitehall Police Department the following day to report the incident to the police.

At trial, Shavar Hussett testified that he and his friends played basketball at the hoop positioned on Woodside Alley approximately twice a month, sometimes until 10 p.m. He stated that on almost every occasion, the Appellant would come outside of her home and yell at him, calling him various derogatory names. Mr. Hussett stated that he never answered the Appellant back and did not curse at her, nor did he recall any

of his friends cursing at her.

The Appellant testified that on numerous occasions she had spoken to Ms. Hussett regarding the children's use of the basketball hoop and the proximity to her driveway. She stated that she was concerned about her liability should a child get hurt on her property. She further stated that it was the Hussetts who were constantly using racial slurs against her and her family. She testified that on April 25, 2015, she had her windows open and was able to hear the basketball bouncing. She stated that she saw a child nearly get run over by a car passing through the alley and called the police out of concern for the child's safety. She denied calling the teenagers any names on that evening.

On cross examination, the Appellant acknowledged that upon moving into the neighborhood she was aware that the houses were fairly close together and that there were many children in the neighborhood. She further acknowledged that the sound of a dribbling basketball annoys her and that she has filed a civil lawsuit demanding $100,000 in damages because of the noise from the basketball playing. The Appellant also entered a video into evidence, which she recorded on her cellular telephone of the April 25, 2015 incident.

From the video, the Court was able to hear the Appellant telling the teens to play basketball at the playground and that they are disturbing people at night. She never suggested to the teens that she thought the behavior was unsafe or that she saw one of them almost get hit by a passing vehicle.

Trial Court Opinion, 8/21/17, at 2-6.

On April 27, 2015, a criminal complaint charging harassment and disorderly conduct was filed against Appellant.[1] The preliminary hearing originally scheduled for June 17, 2015, was continued due to Appellant's

---

[1] Initially, Appellant was charged with harassment graded as a third-degree misdemeanor and a summary disorderly conduct. The harassment charge was later amended to reflect a summary grading of that offense.

unavailability, and rescheduled an additional five times to accommodate both the Commonwealth and Appellant. The preliminary hearing was conducted on July 26, 2016, and Appellant was formally arraigned on the charges on September 12, 2016.

Multiple status conferences were held thereafter, at which Appellant indicated a desire to put off trial so that she could obtain counsel. At the March 30, 2017 status conference, trial was scheduled for June 20, 2017. On the day of trial, Appellant sought a postponement to obtain counsel, but her request was denied. The bench trial commenced and Appellant proceeded *pro se*. The court found Appellant guilty of both summary offenses, and sentenced her to pay a fine of $100 at each of the two counts.

Appellant timely appealed and complied with the trial court's order directing her to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court issued its Rule 1925(a) opinion, and the matter is ripe for review. Appellant raises four issues, which we have reordered for ease of disposition.[2]

> I. Whether the evidence in the record is insufficient to support a conviction of harassment as enumerated under 18 Pa.C.S.A. § 2709(a)(3)?

> II. Whether the evidence in the record is insufficient to

---

[2] We address Appellant's sufficiency claims first, as a successful sufficiency challenge results in discharge rather than a new trial. **Commonwealth v. Toritto**, 67 A.3d 29, 33 (Pa.Super. 2013) (*en banc*); **Commonwealth v. Breighner**, 684 A.2d 143 (Pa.Super. 1996) (*en banc*).

support a conviction of disorderly conduct as enumerated under 18 Pa.C.S.A. § 5503(a)(3)?

III. Whether it is an abuse of discretion to deny a continuance request for time to employ counsel after the right to counsel is eliminated by oral motion before [*sic*] immediately before trial?

IV. Whether the evidence in the record is sufficient to support a speedy trials violation as enumerated under Pa.R.Crim.P. 600?

Appellant's brief at 2-3.[3]

Appellant's first and second issues challenge the sufficiency of the evidence underlying her convictions. In evaluating a challenge to the sufficiency of the evidence, our standard of review is as follows:

A claim impugning the sufficiency of the evidence presents an appellate court with a question of law. The standard an appellate court applies in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, an appellate court may not weigh the evidence and substitute its judgment for the fact-finder. In addition the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence . . .[T]he finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

_____

[3] Appellant argues in her brief that there were discovery violations that hampered her ability to prepare her defense and that the police lacked probable cause to arrest her. Since these issues are not "subsidiary question[s] fairly comprised" within the statement of questions, or "fairly suggested thereby[,]" as required by Pa.R.A.P. 2116(a), we do not consider them.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014) (citations omitted).

Absent an abuse of discretion, a reviewing court will not reverse a trial court's determination of credibility. *Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa.Super. 2006) (citing *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa.Super. 2003)). Appellate courts will find that a trial court has abused its discretion if, "in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *In re K.D.*, 144 A.3d 145, 151 (Pa.Super. 2016).

Appellant contends that the evidence was insufficient to prove harassment. A person commits the summary crime of harassment "when, with intent to harass, annoy, or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S. § 2709(a)(3). A "course of conduct" is defined as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously." 18 Pa.C.S. § 2709(f). Also, "[a] single act will not constitute a course of conduct under the definition of harassment." *Commonwealth v. Lute*, 793 A.2d 949, 961 (Pa.Super. 2002) (citing *Commonwealth v. Battaglia*, 725 A.2d 192 (Pa.Super.

1999)).

Appellant argues first that the Commonwealth failed to prove that she had the intent to harass. She maintains that "imply[ing] intent to harass, alarm, or annoy . . . based on words alone" was not enough to prove intent to harass. Appellant's brief at 16.

Appellant's argument flies in the face of well-settled Pennsylvania case law holding that "[a]n intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Beck*, 441 A.2d 395 (Pa.Super. 1982); *see also Lute*, *supra* ("A course of conduct intended to harass, annoy or alarm a person can be based on words alone."). Herein, the totality of the circumstances supports the reasonable inference that Appellant intended to harass.

Officer Quadir Carter testified that he received a call on April 25, 2015, reporting a disorderly group of kids in an alley. When he arrived, the Officer found cooperative, kind, teenagers playing basketball, who moved out of the way when he drove by and caused no apparent risk by their actions. N.T., 6/20/17, at 22-24.

Ms. Hussett testified to the following. Appellant routinely came outside to yell at the boys as they played basketball. On one occasion, Appellant threw water at the children; on another occasion, she threw a glass bottle at them. Appellant told her the police would "lock her black A-S-S up first" if Ms. Hussett called the police. *Id*. at 45. Appellant yelled at Ms. Hussett's

four-year-old son to stop bouncing the basketball and took pictures of him. She called Ms. Hussett's fourteen-year-old son "the N word, monkey, asshole." *Id*. at 54-55. In addition, Appellant regularly drove by on the main street and "honked her horn and . . . put her middle finger out, the FU finger," when Ms. Hussett played soccer in the yard with her four-year-old son. *Id*. at 56. On another occasion, the Appellant circled the Hussetts' home in a gold Honda and pointed it out to a passenger. *Id*. at 49-51.

Shavar Hussett, Ms. Hussett's teenage son, testified that Appellant came outside during his birthday party and called him "the N word," "monkey," and similar racially-charged epithets. *Id*. 71-72. He added that he plays basketball a couple times a month and, for as long as the hoop has been there, Appellant has harassed him. *Id*. Shavar reported that he never addresses Appellant and he has never cursed at her. *Id*. at 75.

At trial, Appellant challenged the testimony of all three Commonwealth witnesses, maintaining that she was the true victim of harassment. *Id*. at 92-93. She conceded, however, that the kids never cursed or screamed at her, or spoke back disrespectfully. *Id*. at 92-93. She played a video that she recorded on her cellphone that depicted her yelling at the children to stop playing basketball. *Id*.

The trial court, sitting as factfinder, used its "ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as . . . observations of the demeanor and character of the

witness[es]" as they were on the stand, and credited the accounts of the Commonwealth witnesses. Trial Court Opinion, 8/21/17, at 8. We may not disturb the trial court's credibility determinations where, as here, they are supported by the record. This claim fails.

Appellant also challenges the trial court's finding that her actions of "repeatedly . . . screaming and yelling at the teenagers, calling them derogatory and racial slurs, and even throwing a bottle at the[m]" were committed solely to harass, annoy, or alarm the teenagers and/or the Hussett family, and served no legitimate purpose. Trial Court Opinion, 8/21/17, at 11. She argues that the Commonwealth failed to prove that her course of conduct served no legitimate purpose. Appellant's brief at 16.

The record reveals that, at trial, Appellant argued extensively that she feared for the children's safety, as well as for her own liability. She downplays that position on appeal, focusing instead on the other purposes that her course of conduct purportedly served, including: "defending herself against [Ms. Hussett] from malicious prosecution, false police reports, terroristic threats, stalking, negligence, and nuisance." *Id*. Appellant also offers a lengthy description of the doctrine of attractive nuisance, and a confusing argument that her "intended purpose was to stop [Ms. Hussett] and her children from infringing upon her rights as a property owner . . . [which] is legitimate because [of] the doctrine of attractive nuisance." *Id*. at 18.

We note that Appellant advanced all of the aforementioned arguments during trial, and they were rejected by the factfinder. The trial court expressly stated that it was unpersuaded that Appellant was motivated by a fear that a child would get hurt on her property and she would be liable. The court explained, "My ruling is based on the fact that I don't believe that you had a concern about anybody's safety. All I heard in that video was about the noise." N.T. Trial, 6/20/17, at 103.

Again, Appellant takes issue with the facts as found, but it is not our role to reconsider fact/credibility determinations made by the trial court. *See Antidormi*, *supra; Hughes*, *supra*; *Lute*, *supra*. The trial court determined that Appellant's motivation was to prevent the noise caused by the teenagers playing basketball. Even if we were to find, as Appellant urges, that she had a legitimate purpose in reducing noise, her course of conduct, *i.e.*, screaming and yelling at the teenagers, calling them derogatory and racial slurs, and throwing a bottle at them, cannot be said to serve that legitimate purpose.

The facts of this case are analogous to those in *Commonwealth v. Duda*, 831 A.2d 728 (Pa.Super. 2003). On appeal from his harassment conviction for shouting obscenities and threats at his ex-wife over the phone, Duda claimed that the phone calls served the legitimate purpose of discussing visitation rights with his ex-wife. However, this Court held that "[G]iven [Duda's] use of obscenities and threats during the calls, one could

not conclude that he was serving a legitimate purpose by making the calls." *Id*. at 731. Similarly, Appellant's conduct herein, namely the use of profanity, racial epithets, and bottle throwing to deter the children from playing basketball, did not serve a legitimate purpose. Appellant's argument fails.

Next, Appellant challenges the sufficiency of the evidence supporting her disorderly conduct conviction. A person is guilty of disorderly conduct if, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . uses obscene language, or makes an obscene gesture." 18 Pa.C.S. § 5503(a)(3). It is well-settled law that, "notwithstanding the freedom of speech, certain speech is not protected and can be the basis for a conviction of disorderly conduct." *Lute*, *supra* at 962 (citing *Commonwealth v. Mastrangelo*, 414 A.2d 54, 58 (Pa. 1980)).

Appellant contends that, "because there is insufficient evidence of obscene language or gestures, the conviction of disorderly conduct must be set aside." Appellant's brief at 16. She argues that her actions were "insufficient to establish that Appellant was intend[ing] to appeal to anyone's prurient interest or [to conduct] herself in a patently offensive way." *Id*.

However, Ms. Hussett and Shavar Hussett testified that Appellant made obscene gestures to them on numerous occasions. Shavar reported that Appellant called him "the N word," "monkey," "asshole," and other racially-derogatory terms. N.T., 6/20/17, at 54-55, 71-72. Shavar further

testified that he understood Appellant's racial epithets to be specifically targeted toward him, because he was the only person of color within his group of friends. *Id*. at 71. The trial court credited this testimony and found that Appellant's words and actions could not be seen as an exercise of any constitutionally-protected right. The trial court also found that Appellant used obscene language and gestures solely to harass, annoy, or alarm the teenagers and the Hussett family, and since that finding is supported by the record, we may not disturb it. No relief is due.

Next, Appellant alleges that it was an abuse of discretion for the trial court to deny her request for another continuance "after eliminating the Appellant's right to counsel and then immediately proceeding on trying the amended complaint." Appellant's brief at 9.

We find first that Appellant was not entitled to counsel. Pa.R.Crim.P. 122 provides that, "Counsel shall be appointed in all summary cases, for all defendants who are without financial resources or who are otherwise unable to employ counsel **when there is a likelihood that imprisonment will be imposed**." Pa.R.Crim.P. 122(1) (emphasis supplied). It is well settled in this Commonwealth that, "[g]enerally, there is no requirement, either under the United States Constitution or under the Pennsylvania Constitution, that defendants in all summary cases be provided with counsel." *Commonwealth v. Smith*, 868 A.2d 1253, 1256 (Pa.Super. 2005) (quoting *Commonwealth v. Long*, 688 A.2d 198, 201 (Pa.Super. 1996)). Further,

for a summary trial, a defendant is only entitled to be advised of a right to counsel if there is a "reasonable likelihood of a sentence of imprisonment or probation." Pa.R.Crim.P. 454(A)(2). A reasonable likelihood of imprisonment or probation requires more than the mere possibility under the statute. *See Commonwealth v. Blackham*, 909 A.2d 315, 318 (Pa.Super. 2006) (citing *Argersinger v. Hamlin*, 407 U.S. 25 (1972)).

In the instant case, Appellant was not indigent. Furthermore, the Commonwealth did not seek imprisonment or probation, and the trial court "clearly had no interest in sentencing [Appellant] to a term of imprisonment or probation." Commonwealth's brief at 12. Further, the two convictions actually resulted in fines only, not imprisonment. Thus, Appellant was not entitled to the appointment of counsel and her claim in this regard is without merit.

Nor did the trial court abuse its discretion in denying Appellant's request for a continuance to obtain counsel as trial commenced in June 2017. At a status conference on February 16, 2017, the court noted that the case was "really stale," and that four trial dates had been postponed to allow Appellant to secure counsel. N.T., 2/16/17, at 4. Nonetheless, the court postponed trial yet again, with the admonition, "I can't keep doing it." *Id*. On March 30, 2017, the court scheduled the trial for June 13, 2017, and noted that this would give Appellant additional time to secure an attorney. Trial actually commenced on June 20, 2017. That day, Appellant again

sought a postponement for purposes of obtaining counsel, but the court said, "We're now into this since April of 2015 . . . At this point in time, I think that there's been quite too much delay, and I am going to require you to go forward." N.T., 6/20/17, at 8-9.

The record establishes that the trial court accommodated Appellant's desire to have counsel by continuing the trial numerous times. We find no abuse of discretion in the court's denial of yet another continuance on the date of trial.

The final issue raised by Appellant involves her right to a speedy trial. Appellant claims that she is entitled to discharge under Pa.R.Crim.P. 600 because she was not brought to trial within 365 days of the filing of the criminal complaint. Rule 600 provides that, when a defendant has not been brought to trial within the time periods set forth in the rule, 365 days in the instant case, "**at any time before trial**, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated." Pa.R.Crim.P. 60(D)(1) (emphasis supplied). The Commonwealth argues herein, and the trial court agreed, that Appellant waived her speedy trial challenge because she failed to raise it before trial.

Appellant concedes that she "did not file a Rule 600 motion at any time prior to her appeal[.]" Appellant's brief at 10. Appellant seeks to excuse her failure to do so by attacking the language of the rule. She

- 15 -

argues that Rule 600 would have included language explicitly providing "that a motion under this rule must be made at the trial level or be waived" if that was the intention behind the rule. Appellant's brief at 10.

Appellant's argument ignores well-established Pennsylvania law. A motion to dismiss pursuant to Rule 600 must be made prior to trial, or such claim is waived. *See Commonwealth v. Baines*, 389 A.2d 68 (Pa. 1978) (speedy trial rule claim was waived where appellant moved for a discharge after the beginning of jury selection); *Commonwealth v. Frank*, 398 A.2d 663 (Pa.Super. 1979) (failure to object prior to trial waives claim under speedy trial rule). A litigant is presumed to know the law. *See Commonwealth v. Robertson*, __ A.3d __, 2018 PA Super 110 (Pa.Super. 2018). Moreover, since Appellant raised this issue for the first time on appeal, it is also waived under Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/18