J-S15026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELISSA JO NORRIS | : | |
| | : | |
| Appellant | : | No. 1041 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 1, 2024
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s):  CP-17-CR-0000863-2023

BEFORE:  OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: OCTOBER 3, 2025**

Melissa Jo Norris ("Norris") appeals from the judgment of sentence following her convictions for driving under the influence of a controlled substance and obstruction of administration of law or other governmental function.[1]  We affirm in part, vacate in part, and remand for resentencing.

The relevant facts are as follows:  Pennsylvania State Trooper Austin Woolcock ("Trooper Woolcock") received a report of an individual passed out in her SUV outside of a Dollar General in Irvona.  **See** N.T., 5/17/24, at 30-32, 42-43.  Trooper Woolcock had been trained in both field sobriety testing and impaired driving enforcement and had charged over 100 drivers with driving under the influence, the majority of which involved drug impairment.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. § 3802(d)(2), 18 Pa.C.S.A. § 5101.

*Id*. at 41-42. He arrived at the Dollar General parking lot at approximately 7:40 p.m. and found Norris asleep in the driver's seat of an SUV with the engine running and the key fob in her lap. *See id*. at 36-45. Trooper Woolcock awakened Norris; from her dazed appearance and bloodshot, glossy eyes, she appeared "kind of out of it." *See id*. at 46. Trooper Woolcock began asking Norris questions but had difficulty hearing Norris because she was mumbling. *See id*. Norris denied using drugs. *See id*. at 47. Trooper Woolcock ordered Norris to perform field sobriety tests; in some cases, she required repeated instructions, she performed other tests poorly, suggesting coordination and comprehension problems. *See id*. at 49-52, 72. Norris asserted she had taken methamphetamine sometime in the previous two days, then admitted she had smoked methamphetamine until 3:30 a.m. that day at a friend's house. *See id*. at 53-56, 70, 81, 112. Trooper Woolcock arrested Norris, advised her of her *Miranda* rights, and transported her to the hospital. *See id*. at 53, 57.

At the hospital, Norris agreed to a blood draw at 9:00 p.m. *See id*. at 57-59. A phlebotomist and a lab technician made four attempts to draw blood from both of Norris's arms but were unable to do so. *See id*. at 86. Norris appeared to the medical personnel to be in pain; a phlebotomist testified Norris said, "Ouch," and responded as if she were hurt. *See id*. at 88. The record indicates that Norris was cooperative for all four attempts to draw blood, but Norris withdrew her consent after the fourth failed attempt. *See*

*id*. at 59-61, 87-89, 94. Trooper Woolcock then took Norris to the police barracks, obtained a warrant for a blood draw, and drove Norris back to the hospital. ***See id***. at 61-62. At approximately 12:00 a.m., a second phlebotomist failed the fifth attempt to obtain a blood sample from Norris. The phlebotomist testified, "I poked her once and she yelled after that," and that it appeared Norris was in pain. ***See id***. at 91-94. After that fifth failed attempt, Norris declined to cooperate with any more attempts to draw her blood. ***See id***. at 64-65, 77, 88, 91-94.

At trial, Norris testified she was tired on the night in question because she had worked a double shift and then dozed off in the parking lot. ***See id***. at 100-05. She testified the multiple attempts to take her blood caused her pain.[2] ***See id***. at 105-07.

In May 2024, a jury convicted Norris of both offenses. The court later imposed a sentence of seventy-two hours to six months of incarceration for driving under the influence and two years of probation for the obstruction charge to run concurrent to the first charge.[3] ***See*** Trial Court Opinion, 11/7/24, at 2.

_____

[2] Norris also testified that after the multiple attempts to draw her blood failed, she offered to take a urine test. ***See id***. at 108.

[3] The court did not explain how Norris could serve a two-year term of probation concurrent to a sentence that was not to exceed six months of imprisonment. Our resolution of Norris's fourth claim resulting in the vacation of Norris's sentence for the obstruction charge obviates the need for us to address that
*(Footnote Continued Next Page)*

Norris filed a motion to stay the execution of sentence pending appeal which the trial court granted on August 12, 2024. The trial court ordered Norris to file a Rule 1925(b) statement and serve it upon the court. Norris filed the statement on September 16, 2024, but failed to serve the trial court.[4]

On appeal, Norris raises four issues for our review:

1. Was it error for the trial court to deny [Norris's] motion for *habeas corpus* relief when the Commonwealth did not meet [its] burden for a *prima facie* case with respect to the charge of driving under the influence of alcohol/controlled substance under 75 Pa.C.S.A. § 3802(d)(2)?

2. Was it error for the trial court to deny [Norris's] motion for *habeas corpus* relief when the Commonwealth did not meet [its] burden for a *prima facie* case with respect to obstructing administration of law or other governmental function under 18 Pa.C.S.A. § 5101.

3. Whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish all elements of the offense with respect to the charge of driving under the influence of alcohol/controlled substance under 75 Pa.C.S.A. § 3802(d)(2) beyond a reasonable doubt?

4. Whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish

_____

question. The issue of the propriety of probationary sentences running concurrent to prison sentences is currently before this Court *en banc*. **See Commonwealth v. Jennings**, No. 1128 EDA 2024; **Commonwealth v. Robinson**, No. 907 EDA 2024.

[4] Norris's failure to serve the 1925(b) statement on the trial court is not dispositive here. The trial court's 1925(b) order was defective because it failed to specify, pursuant to Pa.R.A.P. 1925(b)(3)(iii), both the place Norris could serve the statement in person and where to mail it. **See Commonwealth v. Stroud**, 198 A.3d 1152 n.4 (Pa. Super. 2023).

all elements of the offense of obstructing administration of law or other governmental function under 18 Pa.C.S.A. § 5101 beyond a reasonable doubt?

Norris's Brief at 13-14 (punctuation, italics, citation form, and capitalization standardized).[5]

Norris's first two issues assert the Commonwealth failed to establish a *prima facie* case at her preliminary hearing.

It has long been established that an adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case at a preliminary hearing. **See Commonwealth v. Haney**, 131 A.3d 24, 36 (Pa. 2015); **Commonwealth v. McIntyre**, 333 A.3d 417, 440 (Pa. Super. 2025). Norris's first two issues challenging the proof of a *prima facie* case at her preliminary hearing are thus moot.

Norris's third and fourth issues implicate the sufficiency of the evidence sustaining her convictions for driving under the influence of a controlled substance and obstruction of administration of law or other governmental function.

This Court reviews the sufficiency of the evidence under the following standard:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable

---

[5] We note with displeasure that the Commonwealth has not filed a brief in this case.

doubt. . .. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Stahl*, 175 A.3d 301, 303-04 (Pa. Super. 2017) (citation omitted) (added emphasis removed). In reviewing a sufficiency claim, this Court has also acknowledged that:

we may not weigh the evidence and substitute our judgment for [that of] the fact-[]finder . . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted). A reviewing court "evaluate[s] the entire trial record and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence." *Commonwealth v. Nixon*, 801 A.2d 1241, 1243 (Pa. Super. 2002).

To convict a defendant of driving under the influence of a controlled substance, the Commonwealth must prove she: 1) drove, operated, or was in "actual physical control of the movement" of a vehicle and 2) was under the influence of a drug to a degree that impairs her ability to safely drive, operate, or be in actual physical control of a vehicle." *See* 75 Pa.C.S.A. §3802(d)(2); *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008). Physical control of a vehicle may be established under the totality of the

circumstances, *see Commonwealth v. Dourlain*, 315 A.3d 868, 874 (Pa. Super. 2024), as may impairment, *see Commonwealth v. Cahill*, 324 A.3d 516, 527 (Pa. Super. 2024), but the mere fact of being intoxicated in a running car is not sufficient to prove driving under the influence. *Cf. Bold v. Department of Transportation, Bureau of Driver Licensing*, 320 A.3d 1185, 1197 (Pa. 2024) (requiring some additional indicia of driving under the influence other than a running engine for purposes of license suspension under 75 Pa.C.S.A. § 1547).

Norris asserts the Commonwealth failed to meet its burden of proof because Trooper Woolcock did not see her driving. *See* Norris's Brief at 36-37. The trial court asserted Section 3802(d)(2) does not require testimony that someone saw the vehicle in motion. *See* Trial Court Opinion, 11/7/24, at 4. Actual physical control was established here where police observed Norris in the driver's seat of a parked car with the engine running, and she admitted she recently used drugs elsewhere. *See Bold*, 320 A.3d at 1197. *Compare Commonwealth v. Price*, 610 A.2d 488 (Pa. Super. 1992) (declaring evidence insufficient to prove Price's actual physical control of a car where the evidence at trial showed another person was driving the car at the relevant time). Thus, we perceive no error in the trial court's ruling.

Norris also contends the Commonwealth failed to establish drug impairment because the police were unable to obtain a blood sample from her. *See* Norris's Brief at 33, 37. The trial court considered the other evidence

presented by the Commonwealth—including Norris's impairment, poor performance in field sobriety tests, and admission to smoking methamphetamine—to find the evidence sufficient to establish Norris was under the influence of drugs. *See* Trial Court Opinion, 11/7/2024, at 5.

Again, we find no error. Drug usage and impairment are assessed under the totality of the circumstances. The Pennsylvania Supreme Court has recognized the plain text of 3802(d)(2) "does not require that any specific quantity of a drug be present in a defendant's blood or urine." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1236 (Pa. 2011). Further, the Supreme Court recognized the plain text of 3802(d)(2) neither requires that the drug be measured, nor prescribes the "particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." ***Id***. at 1239. ***See also Cahill***, 324 A.3d at 527 (recognizing the Commonwealth can prove impairment through demeanor or performance on a field sobriety test).

Thus, there was sufficient evidence at trial to establish Norris was impaired by drug usage. She admitted to drug use, ***see*** N.T., 5/17/24, at 109-11, appeared dazed with glossy, bloodshot eyes, ***see id***. at 46, and struggled in the field sobriety tests, ***see id***. at 50. This evidence satisfied the impairment element of the statute. There is no proper legal basis to overturn the jury's verdict for the DUI charge. ***See Antidormi***, 84 A.3d at 756.

Norris's final claim implicates the sufficiency of the evidence she obstructed the administration of law or other governmental function. *See* 18 Pa.C.S.A. § 5101 ("Section 5101"). A defendant violates Section 5101 when she "***intentionally*** obstructs, impairs, or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]" *Id*. (emphasis added); *see also Commonwealth v. Williams*, 331 A.3d 556, 578 (Pa. 2025).

Norris asserts the evidence failed to prove that her actions met the first two elements of § 5101, *i.e.*, that she acted intentionally to obstruct the administration of law. She argues the Commonwealth failed to prove her intent to obstruct as the evidence showed she consented to the blood draw, was the subject of five failed attempts to draw blood, and the blood draw failed for reasons outside of her control. *See* Norris's Brief at 35.

Relying on the Implied Consent Law[6] and precedent construing Section 5101,[7] the trial court noted in its opinion that the jury found that Norris committed obstruction because she prevented the successful drawing of her blood. *See* Trial Court Opinion, 11/7/24 at 6-7. The Commonwealth's

---

[6] *See* 75 Pa.C.S.A. § 1547.

[7] *See* Trial Court Opinion, 11/7/24, at 6 (citing *Com., Dept. of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996); *Murray v. Commonwealth*, 598 A.2d 1356, 1360 (Pa. Commw. 1991)).

questioning of witnesses evidences this same belief that Norris acted with the requisite intent if her actions prevented a successful blood draw. **See** N.T., 5/17/247, at 81, 85, 93 (prosecutor elicits testimony Norris prevented further attempts to draw her blood). Under the record facts here, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we cannot agree the evidence established her intent to obstruct law enforcement.

Section 5101 requires an "intentional . . . attempt[] to influence, obstruct, or delay the administration of law." ***Commonwealth v. Gentile***, 640 A.2d 1309 (Pa. Super. 1994). Here, Norris voluntarily submitted to four attempts to draw her blood, and—after the issuance of a warrant—a fifth failed attempt more than four hours later. Additionally, the uncontroverted evidence shows Norris suffered pain as the result of the multiple, failed attempted blood draws. **See** N.T., 5/17/24, at 88, 94, 105-07. Further, the record is devoid of any indication Norris resisted the trooper's directives or contravened them; the trooper's testimony indicated Norris was not combative in any way. **See *id*.** at 78. Under these unusual circumstances, which demonstrate Norris's cooperation and her withdrawal of that cooperation only after repeated, failed, and painful attempts, we cannot agree as a matter of law that the facts and circumstances sufficiently established Norris's intent to obstruct the administration of law.

The case law relied upon by the trial court is distinguishable from the record facts in the instant matter. **Commonwealth v. Murray**, 598 A.2d 1256, a Commonwealth Court opinion, construes 75 Pa.C.S.A. § 1547 to determine whether the Department of Transportation properly suspended a driver's license for a driver's failure to submit to a blood test. **Murray** is not relevant to, and does not address, the crime of obstruction of the administration of law. Further, while we may cite to a decision of the Commonwealth Court we find "persuasive and expedient," we are not bound by its decisions. **See Commonwealth v. Hunt**, 220 A.3d 582, 591 n.6 (Pa. Super. 2019). **Renwick**, too, addresses only license revocation and has no relevance to the crime at issue. **See Renwick**, 669 A.2d at 936-39.

We recognize no Pennsylvania appellate court has considered if refusal to comply with a warrant to take blood constitutes intentional obstruction by force, physical obstacle, or other unlawful act where the defendant consents to multiple, painful, failed tests. The case law we have found is readily distinguishable from this case. For example, in **Commonwealth v. Palchanes**, 224 A.3d 58, 59 (Pa. Super. 2019), this Court found sufficient evidence to sustain a Section 5101 conviction where the appellant refused to submit to a single blood draw despite the existence of a valid warrant. **See id**. at 61. By contrast, Norris consented without a warrant to four unsuccessful attempts to draw her blood, did not resist a fifth attempt authorized by warrant, and after refusing to participate in further attempts due to the pain

- 11 -

she experienced, offered to submit to another form of testing. That conduct is in no way akin to the blanket refusal to comply with the law *Palchanes* addresses.

Likewise, *Commonwealth v. Mastrangelo*, 414 A.2d 54 (Pa. 1980), which *Palchanes* cites, does not dictate a different result. In that case, the Supreme Court upheld a "§ 5101 conviction based on the defendant's verbal abuse of a parking enforcement officer upon receiving a ticket." *Palchanes*, 224 A.3d at 60 (citing *Mastrangelo*). However, *Mastrangelo* notes that the appellant had committed other unlawful acts in the course of "intentionally obstruct[ing] a meter maid from carrying out her lawful duties," *Mastrangelo*, 414 A.2d at 60, to wit: the appellant was simultaneously convicted of disorderly conduct for publicly harassing and shouting vulgar names at the meter maid. *See id*. at 55. The record before us is devoid of any such aggressive or vulgar actions; there is no evidence Norris engaged in any such conduct here. *See id* at 60, 65, 78. Moreover, the testimony of both phlebotomists indicates that, when withdrawing her consent, Norris indicated she was in pain. *See id*. at 85, 93-94.

Unlike *Mastrangelo* and *Palchanes*, Norris did not commit a concurrent unlawful act, physically interfere, or attempt to thwart the investigation at the outset by refusing to cooperate with the police's effort to execute a valid search warrant. Instead, Norris complied with the police officer's investigation until the point that the multiple failed blood draw

attempts became painful, and appears by any reasonable and common sense standard, futile. Under these circumstances, we believe the statute does not compel a person subject to a DUI blood draw to submit to an unreasonable number of attempted blood draws, as was the case here, and, more importantly, a defendant's refusal to cooperate after five failed attempts does not prove Norris's intention to obstruct the trooper from obtaining a blood sample.

In its closing, the Commonwealth theorized that Section 5101 requires an individual to "comply until [the test] is complete". N.T. 5/17/24, at 145.[8] A plain reading of the statute does not comport with that theory, nor does a common sense reading of the statute. A person acts "intentionally" when "it is his conscious object to engage in conduct of that nature or to cause such a result," 18 Pa.C.S.A. § 302(b)(1)(i), and nowhere in Section 5101 is there an indication that a scenario beyond one's control is deemed intentional obstruction. Certainly a commonsense balance is required where, as here, the defendant's intent is clearly to cooperate and compliance is withdrawn when the attempts prove not only futile but actually cause physical pain. Thus, even given the facts of record reviewed in the light most favorable to the Commonwealth as verdict winner and with all reasonable inferences in its favor, the Commonwealth failed to show an intentional violation of Section

_____

[8] While we appreciate that closing arguments are advocacy and not record evidence, the Commonwealth's theory of the case is insightful here.

5101. Accordingly, we reverse Norris's conviction for violation of Section 5101.

In light of our disposition, the trial court's overall sentencing scheme is upset. We vacate Norris's sentence to permit the trial court to restructure the sentence consistent with this opinion. *See Commonwealth v. Bartrug*, 732 A.2d 1287, 1290 (Pa. Super. 1999) (holding where a defendant appeals a judgment of sentence, he accepts the risk that the Commonwealth may seek a remand for resentencing thereon if the disposition in the appellate court upsets the original sentencing scheme of the trial court).

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/03/2025